**EMILY Q., et al., Plaintiffs,**

**v.**

**Diana BONTA, Defendant.**

**No. CV 98–4181 AHM (AIJx).**

United States District Court,
C.D. California.

March 30, 2001.

---

Nancy M. Shea, Allison Wheeler, Mental Health Advocacy Services Inc., Virginia G. Weisz, Public Counsel Law Center, Sandra B. Pettit, Melinda R. Bird, Marilyn Holle, Suzanna Gee, Protection & Advocacy, Robert D. Newman, Robert D. Newman Law Offices, Los Angeles, CA, Eva Casas–Sarmiento, Office of Clients Rights Advocacy, Anaheim, CA, for plaintiffs.

James F. Ahern, John H. Sanders, CAAG—Office of Attorney General of California, Patrick A. Wu, Andrew W. Owens, Los Angeles County Counsel, Los Angeles, CA, Richard T. Waldow, DAG, Paula L. Gibson, CAAG—Office of Attorney General of California, Los Angeles, CA, for defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION

MATZ, District Judge.

## I. OVERVIEW

The following recitals incorporate "facts," including dates, people's ages and events alleged in the First Amended Complaint ("FAC"), to which the parties stipulated on March 30, 2000. With the parties' consent, the Court has not modified those recitals to account for the passage of time since then.

### A. Parties

1. The plaintiffs are seven children who are eligible for Medi–Cal benefits and allege that they were denied the mental health benefits to which they are entitled under federal law. The children's true names are under seal. They appear by the following pseudonyms: Emily Q., Carl G., Andrew O., Jim N., Angela C., Brian C., Greg S., and Janice C. Joint Stipulation of Facts ("JSF"), p. 1.

a. Emily Q is an 18–year–old girl with intensive mental health needs, who at the time of the FAC was in a placement at Metropolitan State Hospital. FAC ¶ 9. Her parents abandoned Emily. *Id.* She is a ward of the dependency court and has been in institutional placements since she was six. *Id.* Emily has never lived in a home-like setting. *Id.* at ¶ 10.

b. Carl G. is a 14–year–old boy with intensive mental health needs, who at the time of the FAC was in a placement at MacLaren Children's Center. FAC ¶ 13. Carl's mother was a substance abuser, and he was born addicted to drugs and alcohol. *Id.* His parents abandoned him, and he is a ward of the dependency court. *Id.* His grandmother has cared for him since he was three years old. *Id.* Carl's grandmother wants him to live with her. *Id.* at ¶ 15.

c. Andrew O. is a 15–year–old boy with intensive mental health needs, who at the time of the FAC was in a placement at an inpatient psychiatric unit following an emergency hospitalization. FAC ¶ 17. His mother abused him, and he has been placed by the Los Angeles Department of Mental Health in a series of residential programs and group homes since he was six years old. *Id.* at ¶ 18. Following a hospitalization in March, the only placement available to him was Metropolitan State Hospital.

*Id.* Rather than allow Andrew to go to the state mental hospital, his father brought him home. *Id.* at ¶ 19. However, Andrew's condition deteriorated. *Id.* He became increasingly despondent and was again hospitalized on May 20, 1998. *Id.*

d. Jim N. is a 17–year–old boy with intensive mental health needs, who at the time of the FAC was confined at Metropolitan State Hospital. FAC ¶ 22.

e. Angela C. is a 14–year–old girl with intensive mental health needs, who at the time of the FAC had been discharged from a placement at Metropolitan State Hospital. FAC ¶ 26.

f. Brian C. is an 11–year–old boy with intensive mental health needs, who at the time of the FAC was in a residential facility, Rate Classification Level ("RCL") 12, in San Diego County.[1] FAC ¶ 30. Brian was abandoned by his parents at an early age and has been cared for for many years by his grandmother. *Id.* at ¶ 31. Brian lived with his grandmother until he was placed in the RCL 12 facility because his mental health needs were more than his grandmother could handle without assistance. *Id.* Brian and his grandmother have been told that he must leave the RCL 12 facility because he no longer meets the eligibility criteria. *Id.* Brian's grandmother is still unable to care for him without assistance. *Id.* Consequently, she has been told that she must give up custody and make Brian a ward of the dependency court so that he can be placed in a therapeutic foster home. *Id.*

g. Greg S. is a 13–year–old boy with intensive mental health needs, who at the time of the FAC previously had been placed in residential facilities, including a RCL 14 facility, but living with his grandfather. FAC ¶ 35. His father abandoned Greg. *Id.* at ¶ 36. He was removed from his mother's custody several years ago and made a ward of the dependency court. *Id.* Greg's grandfather wants Greg placed with him. *Id.* However, his grandfather cannot manage Greg's mental health needs without assistance. *Id.* Greg may again be institutionalized. *Id.*

h. Janice C. is a 19–year–old girl with intensive mental health needs, who at the time of the FAC was in a group residential facility in Contra Costa County. FAC ¶ 40. Her father abandoned her. *Id.* at ¶ 41. Her mother and her mother's boyfriend physically and sexually abused her. *Id.* She has been diagnosed with post-traumatic stress disorder as well as depressive disorder and disassociative disorder. *Id.* She had been cared for by her foster mother, Diane C. *Id.* However, Diane C. was eventually unable to manage Janice's mental health needs on her own. *Id.* Janice may end up in a large, locked institution. *Id.*

2. On May 4, 1999, Judge William D. Keller, the judge to whom this case was previously assigned, certified a state-wide class pursuant to Fed. R.Civ.P. 23. The class consists of: All current and future beneficiaries of the Medi–Cal Medicaid program below the age of 21 in California who:

---

1. *See* Section I(2)(a) below for the definition of RCL.

(a) are placed in an RCL facility of 12 or above and/or a locked treatment facility for the treatment of mental health needs; (b) are being considered for placement in these facilities; or (c) have undergone at least one emergency psychiatric hospitalization related to their current presenting disability within the preceding 24 months. JSF, pp. 2–3 (citing Order re: Class Certification [and] Preliminary Injunctive Relief, May 4, 1999).

a. "[Plaintiffs] ... placed in a Rate Classification Level [('RCL')] facility of 12 or above[.]"

   i. Rate Classification Levels are a standardized schedule of reimbursements paid to foster care providers that are licensed as group homes based upon the level of care and services provided. Plaintiffs' Memorandum of Points and Authorities in Support of Motion For Class Certification ("Pl.Memo"), p. 4 (citing Cal. Welfare and Institutions Code § 11462).

   ii. A facility with a RCL of 12 or above receives the highest monthly rates paid to these group homes. *Id.*

   iii. As of September 1997, 712 children in Los Angeles County had been placed in RCL 12 group homes and another 113 children had been placed in RCL 14 group homes. *Id.*

b. The exact size of the class is uncertain. Pl.Memo, p. 4.

c. The total number of children under age 21 determined to be eligible for Medi–Cal and the Early and Periodic Screening, Diagnosis and Treatment program ("EPSDT") in California was 3,572,171 in fiscal year 1997–1998 as calculated by the California Department of Mental Health ("DMH"). JSF, p. 4. Of these children, 97,183 received some form of non-inpatient hospital specialty mental health service from county mental health plans ("MHPs"), which are managed care plans for mental health services. Dec. JSR, p. 3 (Order re: Class Certification [and] Preliminary Injunctive Relief, May 4, 1999).

d. The parties estimate the size of the class to be 24,035 children. Joint Stipulations and Responses to Draft Order Re: Findings of Fact and Conclusions of Law ("JSRDO"), p. 2. The total class consists of the members of the following subcategories.

   i. *Approximately 3,000 children are currently placed in an RCL facility of 12 or above* and/or a locked treatment facility for the treatment of mental health needs. *Id.*

   ii. *Approximately 6,000 children are being considered for placement in an RCL facility of 12 or above* and/or a locked treatment facility for the treatment of mental health needs. *Id.* at 3.

   iii. *Within the preceding 24 months, 13,910 children have undergone at least one emergency psychiatric hospitalization* related to their current presenting disability. *Id.*

3. The defendant is the director of the California Department of Health Services ("DHS"), Diana Bontá. Director Bontá is responsible for the implementation and administration of the Medicaid program in California. JSF, p. 2.

**B. This Action**

1. This lawsuit is about the provision of mental health services covered by the Medicaid Act.

2. Plaintiffs allege that Defendant failed to provide Medicaid eligible children with the full scope of mental health services covered by the Medicaid Act, including Therapeutic Behavioral Services ("TBS"), which is the focus of this lawsuit. Pl. Memo, p. 1.

   a. TBS is a new type of mental health service for children that involves having a trained, experienced staff person available on a one-on-one basis to work with a troubled child in his or her home and community. *Id.*

   b. TBS helps children and youth live in community settings who would otherwise remain in locked group homes or the state mental hospital. December 1999 Joint Status Report ("Dec.JSR"), p. 2. Typically, these children have problems, such as assaultiveness, poor impulse control or self-injurious behavior, which were too difficult for their families or foster homes to handle. *Id.* TBS provides additional assistance for these children on a short-term basis to prevent the need for an institutional placement or to help them "transition" to a less restrictive setting. *Id.*

   c. For more information regarding TBS, *see* Factual Background at Section II.A.4 below.

**C. Procedural History**

1. Plaintiffs filed the complaint in this action on May 27, 1998 and the FAC on May 3, 1999.

   a. In the FAC, Plaintiffs assert a single cause of action, arising under 42 U.S.C. § 1983, alleging Defendant violated the federal Medicaid Act, 42 U.S.C. § 1396 *et. seq.* Plaintiffs argue that Medicaid-eligible children under age 21 have been denied mental health services to which they are entitled, FAC ¶ 74; that Defendant failed to effectively inform children and their families of the mental health services to which they are entitled, FAC ¶ 75; and that Defendant failed to ensure that there are providers qualified and willing to provide the mental health services to which they are entitled, FAC ¶ 76. Dec. JSR, p. 4.

2. Judge Keller's February 24, 1999 Preliminary Injunction required Defendant to "acknowledge" that the Medi–Cal program covered a new mental health benefit known as TBS. Dec. JSR, p. 1. The preliminary injunction specifically required Defendant to:

   a. "Acknowledge that therapeutic behavior services are a Medi–Cal EPSDT supplemental service as described in Plaintiffs' Exhibit # 49, 'Establishing Therapeutic Behavior Services as a Mental Health Plan EPSDT Supplemental Service Benefit, Draft Discussion,' with cover memorandum of September 30, 1998 from Carol Hood, Assistant Deputy Director, Department of Mental Health, at p. 2 of Attachment A." February 24, 1999 Preliminary Injunction at 1.

   b. "Implement procedures for plaintiffs and [putative] class members to request and access therapeutic behavior services as a Medi–Cal EPSDT service." *Id.*

   c. "Inform the members of the [putative] class about the procedures

available for them to request and access therapeutic behavior services." *Id.*

d. The publication "Establishing Therapeutic Behavior Services as a Mental Health Plan EPSDT Supplemental Service Benefit, Draft Discussion," with cover memorandum of September 30, 1998 from Carol Hood, Assistant Deputy Director of the California Department of Mental Health, was sent to two of the law firms representing Plaintiffs, three state agencies, the Los Angeles County Mental Health Department, provider organizations and others. This plan was a draft implementation plan to be used while information was gathered to aid in the development and implementation of a permanent plan.

   i. The Plaintiffs, in their Memorandum of Points and Authorities in Support of Motion for Class Certification stated in a footnote that they found this to be an "excellent plan."

   ii. Defendant claims that DMH began implementing this plan in June 1999 giving itself two years to evaluate the program. Reply, p. 7. Those two years have not passed. *Id.*

3. On May 4, 1999, Judge Keller certified a state-wide class and extended the preliminary injunction to all class members. (*See* Section I(A)(2) above.)

4. On July 23, 1999, the parties notified the court that Defendant stipulated to the entry of judgment against her on all claims in the FAC. Dec. JSR, p. 3.

5. Defendant stipulated to the entry of a permanent injunction with the following provisions:

a. DMH shall inform MHPs that members of the class are eligible for TBS services when other services are required and criteria are met; MHPs shall provide class members with TBS in accordance with the plan attached as Attachment "A" to the preliminary injunction entered on May 5, 1999, and the directive from DMH, entitled "Therapeutic Behavioral Services," dated July 23, 1999 ("July 23, 1999 policy letter"), Joint Exh. 138;

   i. The phrase, "when other services are required and criteria are met," means that for a child/youth to meet the medical necessity requirement, that child/youth must be receiving other specialty mental health services. This information is in the July 23, 1999 policy letter. Joint Exh. 138.

b. DHS shall require each MHP to submit a letter reporting how it intends to implement therapeutic behavior services within the county, and will provide Plaintiffs' counsel with copies of these letters;

c. DHS shall provide, or arrange through others to provide, ongoing training and technical assistance to the MHPs, as well as to the staff at Metropolitan State Hospital and Napa State Hospital regarding the provision of TBS services; in the design and delivery of this training, DHS shall consult with staff of the California Department of Social Services who have developed training regarding wraparound services [2] pursuant to

---

**2.** Wraparound services are explained in the     Factual Background section at Section

Senate Bill 163;

d. DHS shall require the MHPs to provide to Plaintiffs' counsel: copies of all written notices which deny, terminate or suspend TBS for members of the class; DMH shall require MHPs to submit to DMH a form documenting the approval of TBS for members of the class; DMH shall provide copies of the denial notices and the approval forms to Plaintiffs' counsel on a quarterly basis;

e. DHS shall require that each MHP ensure that class members shall have access to TBS when the requirements in the July 23, 1999 policy letter are met; the MHPs shall have sufficient mental health providers able and willing to provide TBS to ensure access to the service by class members;

   i. The July 23, 1999 policy letter sets forth the criteria for Medi–Cal reimbursement of TBS. The child/youth must:

     (a) be a full-scope Medi–Cal beneficiary under age 21;

     (b) meet the MHP medical necessity criteria; and

     (c) be a member of the certified class or the child/youth must have previously received TBS while a member of the certified class.

   ii. The July 23, 1999 policy letter also sets forth the criteria for TBS eligibility as follows:

     (a) The child/youth must be receiving other specialty mental health services; and

     (b) The clinical judgment of the mental health provider indicates that it is highly likely that without the additional short-term support of TBS that:

      (i) The child/youth will need to be placed in a higher level of residential care, including acute care because of a change in the child/youth's behaviors or symptoms which jeopardize continued placement in a current facility; OR

      (ii) The child/youth needs this additional support to transition to a lower level of residential placement. Although the child/youth may be stable in the current placement, a change in behavior or symptoms are expected and TBS are needed to stabilize the child in the new environment.

f. members of the Plaintiff class shall be entitled to receive TBS during the hours of day treatment intensive or day rehabilitation, as well as at other times; and

g. the court shall maintain jurisdiction over this matter for three years following entry of judgment.

h. Plaintiffs' counsel shall be entitled to recover their reasonable attorneys' fees and costs in this case. The parties shall be given sixty days after entry of judgment to attempt to negotiate a settlement regarding the award of fees and costs. Failing such an agreement, Plaintiffs shall be given an additional thirty days to file the appropriate motion.

i. This lawsuit shall not resolve the issue of whether members of the Plaintiff class are entitled to receive TBS that are not short-term and/or transitional in nature. This

II(A)(4)(f) below.

particular issue is expressly reserved by the members of the class for future litigation. July 23, 1999 Joint Status Report ("JSR") pp. 3–5.

6. The parties could not agree on all issues regarding the appropriate remedy in this case and identified eleven areas of disagreement. *Id.*

    a. The parties agreed to attempt to resolve these remaining issues by way of a noticed motion to be decided by the Court.

7. On October 28, 1999, Judge Keller participated in a telephonic status conference during which he attempted to bring the parties to settlement. Dec. JSR, p. 3. This effort was unsuccessful. *Id.*

8. The parties again agreed that their differences might be resolved by judicial intervention through a motion to this Court. *Id.*

**D. Current Status of This Action (Plaintiff's Motion for Permanent Injunction)**

1. On March 30, 2000, Plaintiffs filed a Motion for a Permanent Injunction ("Motion").

2. The remaining disputes between the parties concern the manner in which the appropriate remedy shall be implemented and the form of the permanent injunction. Motion, p. 4. Defendant continues to assert a right to trial on the "material disputed facts," though it is unclear what material facts are still in dispute and what effect, if any, such facts would have on the terms of this injunction. *See* Defendant Diane Bontá, Director, California Department of Health Services' Exceptions to the Preliminary Tentative Ruling Dated July 26, 2000 ("Def.Exceptions") at 2. The parties were unable to come to an agreement about the appropriate injunctive relief with regard to certain issues, as follows.

3. *Issues Re What Defendant Should Be Required To Do*

    a. provide class members with adequate notice about TBS and the other supplemental mental health services available through the Medi–Cal program, including a list of EPSDT supplemental mental health services;

Court's Conclusion: Plaintiffs' request is granted.

    b. permit class members, their families, legal representatives and others to make direct requests for TBS; give them written notice of the denials of these requests; and certify that TBS has been considered and deemed inappropriate before placing children in more restrictive group homes or locked treatment facilities;

Court's Conclusion:

    i. Plaintiffs' request for direct requests is denied.

    ii. Plaintiffs' request for denial notices is denied.

    iii. Plaintiffs' request for TBS certification is granted.

    c. target the class members at Metropolitan and Napa State Hospitals for an assessment on whether they would benefit from TBS and provide TBS to class members while they are still in Metropolitan and Napa State Hospitals to facilitate their orderly transition back into the community;

Court's Conclusion:

    i. Plaintiffs' request for an immediate assessment of all class members in Napa and Metropolitan State Hospitals is granted.

ii. Plaintiffs' request for transitional TBS is granted.

d. provide TBS to class members beyond their twenty-first birthday if they are still in the midst of treatment and as compensatory equitable relief for violating their rights under federal law during these past few years;

Court's Conclusion:

i. Plaintiffs withdrew their request for provision of TBS for class members beyond their 21st birthday when in the midst of treatment.

ii. Plaintiffs' request for compensatory TBS as a form of equitable relief is granted.

e. establish minimum qualifications for the mental health staff who will assess and provide TBS to class members; require the MHPs to provide lists of those mental health providers who are qualified and willing to provide TBS to class members; and monitor the adequacy of TBS provider numbers;

Court's Conclusion: Plaintiffs' requests are granted.

f. monitor closely the counties' provision of TBS to class members; take corrective measures; and report on these matters to Plaintiffs' counsel.

Court's Conclusion: Plaintiffs' requests are granted.

4. Defendant has no cost estimates for the implementation procedures requested by Plaintiffs in their proposed permanent injunction. JSF, p. 4.

5. The pending motion concerns the parties' dispute over measures proposed by Plaintiffs for inclusion in the permanent injunction in this case. Plaintiff's Findings of Facts and Conclusions of Law ("Pl. FFCL"), p. 9, # 4. Most of Plaintiffs' proposals involve procedural, not substantive matters. *Id.*

a. Plaintiffs do not challenge the provisions in the DMH plan concerning who is eligible to receive TBS and what type of TBS is available through the Medi–Cal program. *Id.*

b. Plaintiffs propose two substantive changes in the DMH plan which involve whether class members can receive TBS while they are still in state hospitals to facilitate their orderly transition back into the community and whether class members can receive TBS beyond their 21st birthday. *Id.*

c. Plaintiffs propose a number of procedural measures with the objective of ensuring that class members will receive mental health services that they are entitled to receive under the Medicaid Act. *Id.* at 11, # 5.

### E. Applicable Law—The Medicaid Act, 42 U.S.C. § 1396 *et seq.*

Plaintiffs assert a single cause of action alleging Defendant violated the federal Medicaid Act, 42 U.S.C. § 1396 *et seq.*

### F. Burden of Proof

1. To qualify for a permanent injunction, "plaintiffs must establish actual success on the merits, and that the balance of equities favor injunctive relief." *Orantes–Hernandez v. Thornburgh,* 919 F.2d 549, 558 (9th Cir.1990) (citation omitted).

2. "[T]he plaintiff seeking an injunction must prove the plaintiff's own case and adduce the requisite proof, by a preponderance of the evidence, of the conditions and circumstances

upon which the plaintiff bases the right to and necessity for injunctive relief." *Id.* (citation omitted).

3. To the extent Plaintiffs' requests have been granted in this Permanent Injunction, Plaintiffs have satisfied their burden of proof.

## II. FACTUAL BACKGROUND

### A. Medicaid and Medi–Cal Programs

#### 1. Medicaid

a. Title XIX of the Social Security Act is a Federal–State matching entitlement program that pays for medical assistance for certain vulnerable and needy individuals and families with low incomes and resources. Def. Findings of Fact Conclusions of Law ("Def.FFCL"), p. 8, # 1.

   i. This program, known as Medicaid, became law in 1965 as a jointly funded cooperative venture between the Federal and State governments to assist States in furnishing medical assistance to eligible needy persons. Def. FFCL, p. 8, # 2

   ii. Medicaid is the largest program providing medical and health-related services to America's poorest people. HCFA Website, http://www.hcfa.gov/Medicaid/meligib.htm.

b. 42 U.S.C. § 1396a sets forth the mandatory requirements of a state Medicaid plan.

c. States have some discretion in determining which groups their program will cover. HCFA Website, http://www.hcfa.gov/Medicaid/meligib.htm. However, to be eligible for federal funds, States are required to provide Medicaid coverage to all individuals and groups designated in 42 U.S.C. § 1396a(a)(10)(A)(i). These groups include low income families with children, as described in Section 1931 of the Social Security Act.

d. Within the guidelines set forth in the Medicaid Act, Medicaid policies for eligibility, services and payment vary among the States. Def. FFCL, p. 9, # 3.

e. A state plan, and its amendments, must be approved by the United States Health Care Financing Administration ("HCFA"). Def. FFCL, p. 22, # 39.

f. Title XIX of the Social Security Act (the Medicaid program) allows for flexibility within the States' Medicaid plans. HCFA, *State Medicaid Manual* § 5010C (Apr. 1990).

   i. However, some federal requirements are mandatory if federal matching funds are to be received. Def. FFCL, p. 10, # 12.

   ii. Services the States are required to provide under Medicaid include EPSDT services for children under the age of 21. Def. FFCL, p. 11, # 14.

g. California has chosen to participate in the federal Medicaid program through its program called Medi–Cal. Motion, 3:7–15.

#### 2. Medi–Cal

a. Federal law requires that participating states designate a single state agency to be responsible for implementing the Medicaid program. 42 U.S.C. § 1396a(a)(5).

b. In California, DHS is the state agency responsible for the administration of the Medicaid program. JSF, p. 2.

c. Defendant Diana Bontá is the current director of DHS. JSF, p. 2.

d. Defendant has executed an interagency agreement with the DMH to administer the provision of Medi–Cal non-state hospital specialty mental health services, including EPSDT services. JSF, p. 2.

e. In 1995, California obtained a waiver of the federal freedom of choice provisions pursuant to section 1915(b) of the Social Security Act, 42 U.S.C. § 1396a. JSF, p. 3.

   i. A Medicaid waiver is obtained when the federal government grants states permission to waive certain federal requirements in order to operate a specific kind of program. HCFA Website, http://www.hcfa.gov/Medicaid/hpg1.htm. Under section 1915(b), the federal government may permit a waiver of "state wideness," of comparability of services and of freedom of choice. *Id.*

   ii. Under the freedom of choice waiver, HCFA gives the state authority to mandatorily enroll beneficiaries in a managed care plan. *Id.*

f. California began implementing a Medicaid mental health managed care program under the federal waiver. JSF, p. 2.

g. Under the managed care waiver, the authority and responsibility for payment authorization for EPSDT specialty mental health services covered by the waiver rest with the MHPs, not with DMH or DHS. JSF, p. 3.

h. The MHPs are responsible for authorization of and payment for EPSDT specialty mental health services and for maintaining a provider network. Def. FFCL, p. 22, # 44.

   i. For a provider to be reimbursed for services under the Medi–Cal program the patient must be a Medi–Cal beneficiary, the service provided must be a Medi–Cal covered service, and the service must have been medically necessary when it was provided. JSF, p. 10.

3. **Early and Periodic Screening Diagnosis and Treatment ("EPSDT")**

a. Federal Medicaid law requires that states implement EPSDT for children under the age of 21. 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B).

   i. Under EPSDT, Defendant is obligated to cover a broad range of mental health services for Medi–Cal eligible children under the age of 21 pursuant to 42 U.S.C. §§ 1396a(a)(43), 1396d(a) and (r).

   ii. In 1995, California began implementing a Medicaid mental health managed care program under a federal waiver. Under the managed care waiver, the authority and responsibility for payment authorization for EPSDT specialty mental health services covered by the waiver rest with county MHPs, not with DMH or DHS.

b. In 1967, Congress amended Title XIX of the Social Security Act, adding the requirement of EPSDT to the Medicaid Act. By this amendment, "Congress intended to require States to take aggressive steps to screen, diagnose and treat children with health problems." *Stanton v. Bond,* 504 F.2d 1246, 1249 (7th

Cir.1974) (holding that Indiana failed to comply with the EPSDT provisions of the Social Security Act). "Senate and House Committee reports emphasized the need for extending outreach efforts to create awareness of existing health care services, to stimulate the use of these services, and to make services available so that young people can receive medical care before health problems become chronic and irreversible damage occurs." *Id.*

c. The EPSDT program has two primary components:

i. The state "must assure the availability and accessibility of required health care resources;" and

ii. The state must "[help] Medicaid recipients and their parents or guardians effectively use [the required health care resources]." HCFA, *State Medicaid Manual* § 5010B (Apr. 1990).

d. These components allow Medicaid agencies to systematically:

i. "Seek out eligible individuals and inform them of the benefits of prevention and the health services and assistance available,

ii. Help them and their families use health resources, including their own talents and knowledge, effectively and efficiently,

iii. Assess the child's health needs through initial and periodic examinations and evaluation, and

iv. Assure that health problems found are diagnosed and treated early, before they become more complex and their treatment more costly." *Id.*

e. Under the EPSDT program, States participating in Medicaid must provide screening services to identify defects, conditions and illnesses. 42 U.S.C. § 1396d(r)(1).

i. States' EPSDT programs must then provide children with diagnostic and treatment services "to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening service, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5).

ii. California uses the term "EPSDT supplemental services" to refer to EPSDT services that are required by federal law but are not otherwise covered under the Medi–Cal plan for adults. 22 C.C.R. § 51184(c).

4. **Therapeutic Behavioral Services ("TBS")**

a. "TBS is an EPSDT supplemental service benefit for children/youth with serious emotional problems who are experiencing a stressful transition or life crisis which, without adequate short-term support, puts them at risk of placement in an institution or group home RCL 12–14 or of being unable to transition from that level to a lower level of residential care." "Draft Discussion," with cover memorandum of September 30, 1998 from Carol Hood, Assistant Deputy Director, Department of Mental Health ("Draft Discussion").

b. TBS provides critical, short-term support services for full scope Medi–Cal children/youth for whom other specialty mental

health Medi–Cal reimbursable interventions have not been, or are not expected to be, effective without additional supportive services. Draft Discussion, p. 1.

c. TBS involves a qualified provider/staff person being immediately available during designated time periods to provide individualized behavioral interventions as needed at home, school or other community-based setting. Draft Discussion, p. 2.

  i. The provider of any EPSDT specialty mental health service, including TBS, must have the following qualifications:

    (A) "[I]ndividual or group providers ... shall ... possess the necessary license or certification to practice psychotherapy independently. Each individual practicing as part of a group provider shall possess the necessary license or certification."

    (B) "[O]rganizational providers ... shall ...(1) Possess the necessary license to operate. (2) Provide for appropriate supervision of staff. (3) Have as head of service a licensed mental health professional or other appropriate individual as described in Sections 622 through 630."

Cal.Code Regs.Tit. 9, § 1810.435.

d. The staff person is available on-site to:

  i. provide structure and support;

  ii. assist the child/youth in engaging in appropriate activities;

  iii. minimize impulsivity; and

  iv. increase social and community competencies by building or reinstating those daily living skills that will assist the child to live successfully in the community. *Id.*

e. TBS is provided as part of a comprehensive treatment plan; it is never provided as the only specialty mental health service. JSF, p. 4. TBS is one type of a broad variety of individualized services that may be used in a "wraparound" process. Draft Discussion, p. 3.

  i. The wraparound process is not a program or a type of service. *Id.*

  ii. The wraparound process can include any combination of services and supports. *Id .. .* The guiding principle of the wraparound process is to do what is needed when it is needed to achieve the child/youth's treatment goals. *Id.*

## B. Current Notices of Existing Medicaid or Medi–Cal Services

### 1. DHS's Notices

a. A DHS brochure entitled "What Medi–Cal Means to You" is provided at the time of application for Medi–Cal. JSF, pp. 5–6; Joint Exh. 131.

  i. The brochure was amended in 1995 to mention EPSDT. *Id.*

  ii. The brochure specifically mentions the availability of additional services "to persons under 21 if they are medically necessary to correct or ameliorate physical and mental health problems or conditions discovered during a visit to a licensed health care professional." *Id.*

b. A "Notice to Medi–Cal Beneficiaries about Mental Health Benefits" was sent to all Medi–Cal

households from October 1997 to June 1998. JSF p. 6; Joint Exh. 159. A similar notice is available in local county Social Services offices. *Id.* The notice describes mental health benefits generally available under Medi–Cal without any specific reference to EPSDT.

c. The DHS brochure about the Child Health and Disability Prevention ("CHDP") program entitled "Medical and Dental Health Check Ups" is provided to new Medi–Cal applicants and at the annual re-determination upon request. JSF, p. 6; Joint Exh. 146. The CHDP brochure provides no specific information about the availability of EPSDT supplemental mental health services.

2. **MHPs' Notices**

a. DMH requires the MHPs to prepare county brochures for their mental health patients describing the mental health services that are covered under Medi–Cal. JSF, p. 6. Joint Exhibits 142–145 are examples of such MHP brochures.

    i. DMH does not require that these brochures mention EPSDT services. *Id.*

    ii. Only the brochure from the County of Los Angeles mentions the EPSDT program by name. Joint Exh. 144.

b. Defendant does not provide or require the MHPs to provide special notice about EPSDT to children and youth who are in an emergency psychiatric hospitalization, who are referred to the county mental health department by the school district for a mental health evaluation and/or who have become dependents of the county juvenile court. JSR, p. 6. Some of the youth described above are not Medi–Cal beneficiaries, nor eligible for Medi–Cal. *Id.*

3. **DMH's Notice of Availability of TBS.**

a. DMH sent a single notice regarding TBS benefits to identifiable children who met the class definition (excluding the state hospital patients there pursuant to criminal proceedings) or to their authorized representative. JSF, p. 6; Joint Exh. 155. These notices were sent in September, October and November of 1999. *Id.*

b. These notices instructed families and children to contact their local mental health plan's toll-free telephone line to request TBS services. *Id.*

c. When these notices were sent, the MHPs had not completed their TBS implementation plans and many people manning the hotlines were unable to answer questions about TBS or unknowledgeable about TBS altogether.

## III. STANDARD OF REVIEW UNDER THE MEDICAID ACT

A. "Due to concerns of comity and federalism, the scope of federal injunctive relief against an agency of state government must always be narrowly tailored to enforce federal constitutional and statutory law only." *Clark v. Coye,* 60 F.3d 600, 603–04 (9th Cir.1995) (citation omitted) (reversing district court's injunction prohibiting the implementation of a California Medicaid eligibility law). A district court's injunction must protect "the plaintiffs' federal constitutional and statutory rights but ... not require more of state officials than is necessary to assure their compliance with federal law." *Id.* If the injunction requires more of state officers than de-

manded by federal law, "[t]he district court will be deemed to have committed an abuse of discretion." *Id.*

■ B. The district court reviews a state agency's interpretation of a federal statute de novo. *See Orthopaedic Hospital v. Belshe,* 103 F.3d 1491, 1495 (9th Cir.1997). The district court must determine whether the state law and regulations implementing Medicaid are "consistent with federal law." *Id.* at 1496.

## IV. THE PERMANENT INJUNCTION WILL BIND THE DEPARTMENT OF HEALTH SERVICES ("DHS"), THE DEPARTMENT OF MENTAL HEALTH ("DMH") AND THE COUNTY MENTAL HEALTH PLANS ("MHPs")

A. "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and *is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.*" Fed. R.Civ.P. 65(d) (emphasis added).

"Rule 65(d) 'is derived from the common-law doctrine that a decree of injunction not only binds the parties Defendant but also those identified with them in interest, in privity with them, represented by them or subject to their control.'" *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1280 (9th Cir.1992) (*quoting Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945)).

B. Under Medicaid, "[a] State plan for medical assistance must ... provide for the establishment or designation of a single State agency to administer or to super-

vise the administration of the plan ..." 42 U.S.C. § 1396a(a)(5).

1. The "reason for the requirement that a state designate a 'single State agency' to administer its Medicaid program ... was to avoid a lack of accountability for the appropriate operation of the program." *Hillburn v. Maher,* 795 F.2d 252, 261 (2d Cir.1986).

2. "If other State or local agencies or officers perform services for the Medicaid agency, they must not have the authority to change or disapprove any administrative decision of that agency, or otherwise substitute their judgment for that of the Medicaid agency with respect to the application of policies, rules and regulations issued by the Medicaid agency." 42 C.F.R. § 431.10.

C. It is undisputed that DHS "is the single state agency responsible for the administration of the Medicaid program" in California. JSF, p. 2. Therefore, DHS decides how to operate Medicaid, and DMH and the MHPs must comply with any decision of DHS, *i.e.,* DMH and the MHPs are subject to the "control" of DHS in the administration of Medicaid.

## V. INFORMING CLASS MEMBERS ABOUT EPSDT SUPPLEMENTAL MENTAL HEALTH BENEFITS AND TBS

### A. Notice of EPSDT Supplemental Mental Health Services and TBS

1. Plaintiffs' Position

   a. Plaintiffs request that Defendant be ordered to:

      i. provide ongoing notice of TBS services to class members;

      ii. inform Medi–Cal beneficiaries about EPSDT supplemental

mental health benefits generally; and

iii. inform children most at risk, including all class members, about EPSDT supplemental mental health benefits. Motion, pp. 6–13.

b. TBS is such a new service that most families do not know about it. *Id.* at 7.

c. Defendant has failed to carry out her duty to inform families about EPSDT supplemental mental health benefits generally. *Id.* at 8. Plaintiffs state that on average only 2% of Medi–Cal children obtain EPSDT mental health services, whereas DMH estimates the incidence of mental health needs to be at or greater than 10%. *Id.* at 8 (citing DMH Budget Change Proposal, Exh. 84, p. 256).

d. New children meet the class criteria as they manifest problem behaviors which trigger placement in more restrictive residential facilities. *Id.* at 6. Thus, if notice is not ongoing, new class members will not be made aware of TBS services.

2. Defendant's Position

a. Plaintiffs' authorities all concern the minimum requirements for informing about EPSDT generally, and not about specific EPSDT supplemental mental health services. Defendant's Opposition to Plaintiffs' Motion for Permanent Injunction ("Opp."), p. 6. Therefore, Plaintiffs' requests are not within the minimum requirements of the federal Medicaid program requirements. *Id.* at 7.

b. Ongoing notice of TBS is not necessary. *Id.* at 10. It is during the screening process of EPSDT that an evaluation of the general physical and mental health, growth, development, and nutritional status of infants, children and youth is done. *Id.* The assessment for mental health services is done using medical necessity criteria. *Id.* Providers doing such screenings can make referrals to mental health specialists and indeed are instructed to consider whether such a referral is necessary. *Id.*

c. Beneficiaries are already informed of the EPSDT Supplemental Mental Health Benefits through various existing notices (*e.g.* MHP Brochures and "Notice to Medi–Cal Beneficiaries about Mental Health Benefits") and, therefore, additional notices are not necessary. *Id.* at 11.

3. Applicable Law

■ "A state plan for medical assistance must ... provide for ... informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance ... of the availability of early and periodic screening, diagnostic, and treatment services ..." 42 U.S.C. § 1396a(a)(43)(A).

a. The term "early and periodic screening, diagnostic, and treatment services" means the following items and services: (1) Screening services, (2) Vision services, (3) Dental services, (4) Hearing services and (5) "Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under

the State plan." 42 U.S.C. § 1396d(r).

b.  The regulations implementing the "informing" requirement set forth in 42 U.S.C. § 1396a(a)(43)(A) provide:

"The agency must[:]

(1) Provide for a combination of written and oral methods designed to inform effectively all EPSDT eligible individuals (or their families) about the EPSDT program.

(2) Using clear and nontechnical language, provide information about the following—

(i) The benefits of preventive health care;

(ii) The services available under the EPSDT program and where and how to obtain those services;

(iii) That the services provided under the EPSDT program are without cost to eligible individuals under 18 years of age, and if the agency chooses, to those 18 or older, up to age 21, except for any enrollment fee, premium, or similar charge that may be imposed on medically needy recipients; and

(iv) That necessary transportation and scheduling assistance . . . is available to the EPSDT eligible individual upon request.

(3) Effectively inform those individuals who are blind or deaf, or who cannot read or understand the English language.

(4) Provide assurance to HCFA that processes are in place to effectively inform individuals as required under this para-graph, generally, within 60 days of the individual's initial Medicaid eligibility determination and in the case of families which have not utilized EPSDT services, annually thereafter." 42 C.F.R. § 441.56(a).

c.  "The intent of the statute [42 U.S.C. § 1396a(a)(43)(A)] is to allow flexibility of process as long as the outcome is effective, and is achieved in a timely manner, generally within 60 days." HCFA, *State Medicaid Manual* § 5121 (Apr.1990). States "have the flexibility to determine how information may be given most appropriately while assuring that every EPSDT eligible receives the basic information necessary to gain access to EPSDT services." *Id.*

d.  When Congress amended Title XIX of the Social Security Act to add the requirement of EPSDT to the Medicaid Act, "Senate and House Committee reports emphasized the need for extending outreach efforts to create awareness of existing health care services, to stimulate the use of these services, and to make services available so that young people can receive medical care before health problems become chronic and irreversible damage occurs." *Stanton v. Bond,* 504 F.2d 1246, 1249 (7th Cir.1974).

e.  One of the primary components of a state's EPSDT program is to ensure that required health care resources are available and accessible. HCFA, *State Medicaid Manual* § 5010B (Apr.1990). In so doing, a state is supposed to seek out eligible individuals and inform them of the benefits of pre-

vention and the health services and assistance available. *Id.*

4. Analysis

a. Defendant has conceded to liability on all of the claims in the FAC including that Medicaid-eligible children under age 21 have been denied mental health services to which they are entitled, and that Defendant failed to effectively inform children and their families of the mental health services to which they are entitled. FAC ¶¶ 74–75. By conceding that Medicaid-eligible children under age 21 have been denied mental health services to which they are entitled, Defendant concedes that TBS is a benefit of the EPSDT program under Medicaid.

b. The informing requirements for EPSDT as set forth above specifically provide that DHS must provide information about "the services available under the EPSDT program and where and how to obtain those services[.]" 42 C.F.R. § 441.56(a)(2)(ii).

c. A state is supposed to seek out eligible individuals and inform them of the benefits of prevention and the health services and assistance available. HCFA, *State Medicaid Manual* § 5010B (Apr. 1990). Defendant has acknowledged a failure to perform this task in the past by failing to require MHPs to provide notice about EPSDT services.

d. Therefore, *federal law requires DHS to ensure that notice regarding all services available under the EPSDT program is provided to Medi–Cal beneficiaries, including notice of TBS and EPSDT supplemental mental health services generally.*

5. Conclusion

a. Plaintiffs' requests are granted.

b. Defendant shall provide a general informational notice describing Medi–Cal Early Periodic, Screening, Diagnosis and Treatment ("EPSDT") supplemental mental health services and where and how to obtain those services to the heads of all Medi–Cal beneficiary households with members under the age of 21, including households which are linked to Medi–Cal through their eligibility for Social Security benefits under the Supplemental Security Income ("SSI") program. This notice shall be provided when a household's application for Medi–Cal benefits is approved or when the beneficiary's Medi–Cal identification card is issued, and annually thereafter. Defendant shall confer in good faith with Plaintiffs' counsel regarding mutually agreeable text and format for this notice, but Defendant shall make the final determination, subject to the Court's review. Defendant shall begin providing this notice no later than 90 days from the date of entry of this Permanent Injunction.

c. Within one year from the entry of this Permanent Injunction, Defendant shall modify the following materials to include a description of EPSDT supplemental mental health services and where and how to obtain them: the DHS Child Health and Disability Prevention ("CHDP") brochure, the DHS brochure entitled "What Medi–Cal Means to You," and the MHP brochures required by 9 C.C.R. § 1810.360. Defendant

shall confer in good faith with Plaintiffs' counsel regarding mutually agreeable text and format for these modifications, but Defendant shall make the final determination, subject to the Court's review.

d. Defendant shall send the above mentioned general EPSDT informational notice and a notice describing TBS to all children on Medi–Cal under age 21 at the time that the child is admitted to Metropolitan State Hospital or to Napa State Hospital and whenever these hospitals are informed that a child is being considered for admission to the hospitals. Such notice need not be given to children committed to Metropolitan State Hospital or Napa State Hospital by order of a court. Defendant shall confer in good faith with Plaintiffs' counsel regarding mutually agreeable text and format for this TBS notice, but Defendant shall make the final determination, subject to the Court's review. Defendant has 120 days from the entry of this Permanent Injunction to comply with this provision.

e. Defendant shall make the necessary arrangements or ensure that each MHP makes the necessary arrangements with those hospitals with which that MHP has contracts for the delivery of specialty mental health inpatient services whereby the TBS notice and the general EPSDT informational notice shall be given to all children on Medi–Cal under age 21 at the time of an emergency psychiatric hospitalization. Defendant has 120 days from the entry of this Permanent Injunction to comply with this provision.

f. Defendant shall make the necessary arrangements or ensure that the MHPs make the necessary arrangements whereby the TBS notice and the general EPSDT informational notice are provided to all children on Medi–Cal under age 21 at the time of admission to any Institution for Mental Disease in California or any RCL 12 facility (when the MHPs are involved in the placement) or any RCL 13 or 14 facility. Within 120 days of entry of this Permanent Injunction, Defendant shall provide the above notices to children in RCL 12 to 14 group homes.

g. For purposes of paragraphs d, e, and f, the TBS notices shall be given to the child, and at least one adult who is a *de facto* or legally authorized representative of the child, if there is any such adult.

i. "Authorized Representative" means any person or entity authorized by law to act on behalf of any client or any person or entity in fact acting on behalf of or helping provide support for any client. Such person or entity may include but not be limited to a minor's parent, a legal guardian, a conservator or a public placement agency. *See* Cal.Code Regs.Tit. 22, § 80001(a)(9) (2000).

ii. Consistent with the Joint Report of the Parties' Consultants, the notice shall contain the following information:

(A) Information about EPSDT services in general, including specific information about TBS;

(B) The definition of TBS;

(C) TBS eligibility requirements;

(D) The contact point at the local MHP for requesting an assessment for TBS and other EPSDT services.

iii. DMH shall require the MHPs to attempt to develop a memorandum of understanding with the local child welfare agency or the local dependency court under which a copy of the aforementioned notice would be attached to the initial court documents filed for all children.

iv. Each MHP shall provide the aforementioned notice to all attorneys who have agreed to accept court appointments in dependency proceedings *to the extent that these names are available from the dependency court* . .

## B. Development and Distribution of a List of EPSDT Supplemental Mental Health Services

1. Plaintiffs request that Defendant be ordered to distribute a list of EPSDT supplemental mental health services to MHPs. Motion, p. 14. EPSDT supplemental mental health services are mental health services that are not itemized in the state plan, but are provided to Medi–Cal eligible youth under the age of 21 and covered under EPSDT when medically necessary. Opp., p. 12.

2. Plaintiffs' Position

a. The range of covered EPSDT supplemental mental health services has been unclear to the public. Motion, p. 14. Without a list of covered services and a set of reimbursement rates for the new services, providers, advocates, children and their families and even MHPs' staff do not know what services could be potentially included in a treatment plan. *Id.*

b. Without clarity about what services are available, Defendant cannot carry out her duty to inform families of "the services available under the EPSDT program and where and how to obtain these services." *Id.* (citing 42 C.F.R. § 441.56).

3. Defendant's Position

a. Defendant argues that providing a list of EPSDT supplemental mental health benefits would stifle program participation, not increase it. Opp., p. 12.

i. All EPSDT services needed for a child, including EPSDT supplemental mental health services, are appropriately determined by a qualified provider. *Id.* at 13.

ii. Providing a list of EPSDT services may give the impression that only certain services are covered under the federal requirements when under EPSDT a wide range of services are available. *Id.*

b. Given the wide-range of services that may be provided, no all-encompassing list could ever be developed, particularly in light of the medical necessity criteria. *Id.*

4. Analysis

■ a. Under informing regulation 42 C.F.R. § 441.56(a)(2)(ii), Defendant must effectively inform all EPSDT eligible individuals about "the services available under the EPSDT program and where and how to obtain those services." As discussed above, Defendant has not effectively informed the Plaintiff class about the specialty mental health services available under the Medi–Cal system.

b. Defendant's argument that providing a list of EPSDT supplemental mental health benefits would stifle program participation is unpersuasive.

5. Conclusion

a. Plaintiffs' request is granted.

b. Within 90 days of this Permanent Injunction, Defendant shall issue a directive which lists the mental health services which have been or may be covered as an EPSDT supplemental mental health service and provide information about the procedure for obtaining coverage of additional non-listed services as an EPSDT supplemental mental health service. Defendant shall distribute this directive to all MHPs.

## VI. TBS REQUEST FORMS, DENIAL NOTICES AND PRE–PLACEMENT CERTIFICATION FORMS

### A. Direct Requests

1. Plaintiffs request that Defendant be ordered to develop and distribute a request/referral form to be used by parents, attorneys of record, social workers and providers to request TBS. Defendant should be required to establish a standard TBS request/referral form and distribute these forms for at least the next three years at which time TBS may presumably be established enough so that special request procedures for TBS will not be necessary. Motion, p. 15.

2. Plaintiffs' Position:

a. Advocates, families and even many MHP staff and providers do not know how to access this new service, especially since there are so few approved TBS providers and no established procedures for requesting TBS. *Id.*

b. Request forms serve an important function and expedite the application process by ensuring that all the necessary information is collected in a standardized way. *Id.*

c. Although request forms are not employed for any other MHP mental health service, this measure is necessary to effectively implement TBS because it is so new and poorly utilized. *Id.*

3. Defendant's Position

a. Defendant should not be ordered to establish procedures for class members to request TBS directly. A procedure to request TBS already exists. Opp., p. 14. Any provider, even a general practitioner, can make a request for TBS on behalf of his or her patient. *Id.* Beneficiaries and families are also permitted to make requests which will lead to an assessment for services. *Id.*

b. Medical necessity is a program requirement and involves clinical judgment that a beneficiary is unlikely to have and therefore is unable to self-diagnose. *Id.* at 14–15. The patient is, however, perfectly capable of reporting symptoms and impairments which a qualified practitioner can then use to determine whether any EPSDT service is medically necessary. *Id.* at 15.

c. TBS is one of a range of specialty mental health services provided as a benefit of the Medi–Cal program and must be provided as part of a comprehensive treatment plan that includes other specialty mental health services. *Id.*

i. There is no such request form for any Medi–Cal specialty mental health service. *Id.*

ii. To have a different mechanism for access to this one service would be confusing and likely to create a precedent that would trigger other requests that beneficiaries be allowed to self-diagnose. *Id.*

iii. Beneficiaries will not have the benefit of having a medical expert who can determine medical necessity, participate in the process, and submit requests for all types of services offered under the program, not just TBS. *Id.* at 15.

d. The administrative burden would be great. This objection is conclusory. Defendant offers no information regarding the cost of implementing such a system.

4. Analysis

■ a. EPSDT services include screening, vision, dental and hearing services. It also includes "such other *necessary* health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions *discovered by the screening services*, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r) (emphasis added).

b. "A state plan for medical assistance must provide for ... arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the *need for which is disclosed by such child health screening services ....*" 42 U.S.C. § 1396a(a)(43)(C) (emphasis added).

c. Currently, a health care provider can make a request for TBS on behalf of his or her patient after the provider determines that a beneficiary needs TBS.

d. TBS may only be provided when medically necessary and an authorized practitioner of the healing arts must make that determination. *See* Cal.Code Regs. tit. 22, § 51242(d)(2). A request/referral form which allows Plaintiffs to submit direct requests for TBS would eliminate that requirement.

5. Conclusion

a. Plaintiffs' request is denied.

b. Plaintiffs cite no federal case law, statutes or regulations to demonstrate that permitting Medi–Cal eligible individuals to make such a request is required by federal law.

c. Plaintiffs concede that there is no direct request form for any other mental health service.

d. Plaintiffs' reliance on the fact that TBS is new and has thus far been poorly implemented is not a valid reason to alter Medi–Cal mental health service procedures. Plaintiffs are correct that Medi–Cal beneficiaries are unaware of TBS. However, this problem will be eliminated by the extensive notice requirements imposed on Defendant by this permanent injunction.

e. Furthermore, Plaintiffs' request does not adequately take into account the medical necessity criteria discussed above.

i. Adequate notice to beneficiaries that TBS is a service offered by Medi–Cal will enable a beneficiary to go in for a screening and discuss all of the services the beneficiary may require, including TBS.

ii. A qualified provider will then be able to assess the beneficiary and determine if TBS (and/or any other services which the

provider determines is needed) is medically necessary.

   iii.  If TBS is medically necessary, the provider will make a request for TBS on behalf of his or her patient.

f.  The denial of this request does *not* preclude Medi–Cal beneficiaries from requesting that a provider perform an evaluation specifically designed to determine eligibility for TBS.

## B. Written Denials

1.  In conjunction with the request/referral form discussed above, Plaintiffs request that Defendant require the MHPs to provide a written response to each request for TBS, regardless of who makes the request. Plaintiffs fail to cite any federal case law, statutes or regulations to demonstrate that such a request would be required by federal law.

2.  Defendant asserts that written denials are already provided when a request for TBS is denied. Plaintiffs do not refute this position. Instead, they argue that under the current system a written response will not be provided to requests from a beneficiary or an advocate who has been unable to locate a willing provider.

3.  Conclusion

   a.  Plaintiffs' request is denied.

   b.  Under Medicaid, a proper request must be submitted by a provider after determining that TBS is medically necessary. The current system, which is described by Defendant and unchallenged by Plaintiffs, adequately provides for written denials of such requests. As Defendant describes the current system:

[MHPs] are required to send notices of action when denying a request for prior payment authorization from a provider of services, if the [MHP] requires such authorization as a condition of payment for services. In most cases if the provider is [an MHP] employee or agency "payment" means the claiming of federal financial participation for the services. [MHPs] are required to send a notice of action when denying a request for TBS services from a child or family which does not have a provider if the MHP determines that the child does not meet the medical necessity criteria for any specialty mental health service. Jt. Submission filed March 26, 2001 at 18.

## C. Certification That TBS Has Been Considered Before Institutionalizing a Class Member

1.  Plaintiffs request that the state employ a new certification form before any child is placed in a RCL 12 facility or higher. The certification would state that a mental health provider has assessed the child, and agrees that there is no alternative, including TBS, to placement.

2.  Plaintiffs' Position

   a.  A certification form will provide a much needed check on poor MHP implementation. Motion, p. 18. This is the only way to ensure that TBS is considered for children prior to an institutional placement. *Id.*

   b.  A certification form will act as a reminder to the MHP and the treatment team that they should consider TBS. Reply, p. 19.

   c.  Even if MHPs are not involved in every placement decision, they are involved in most placement decisions and could integrate a TBS certification form into the pre-

placement screenings already required by the state's new foster care reform legislation. *Id.* Under the State's new foster care reform legislation, MHPs must review the treatment plans of any child placed in out-of-home care who is prescribed psychoactive medications, participate in multi-disciplinary team assessment for children being considered for out-of-state placement, and provide a pre-placement mental health screening and assessment for children served by county social services and probation departments. Reply, p. 14 (citing Senate Bill 933).

3. Defendant's Position

a. Defendant attempts to offer evidence from Defendant's Exhibit 530 to support her position. Opp., p. 18. As discussed above, Defendant's Exhibit 530 is hearsay and, therefore, inadmissible when offered by Defendant.

b. Defendant contends that a certification requirement would be administratively burdensome. *Id.* Defendant offers no information regarding the cost of implementing such a program.

c. Defendant argues that for children placed in a RCL 12 facility, mental health staff are not required to participate in the decision and may not be informed of the decision to place the child in this level facility. *Id.* at 19. Plaintiffs acknowledge that the MHPs are not involved in every placement decision; however, Plaintiffs argue that the MHPs should implement a TBS certification form requiring inter-agency compliance to ensure that place-ment is the last resort. Reply, p. 19.

4. Analysis

a. TBS is provided to "children/youth with serious emotional problems who are experiencing a stressful transition or life crisis which, without adequate short-term support, puts them at risk of placement in an institution or group home RCL 12–14." Draft Discussion. In other words, TBS is provided to children/youth to prevent placement in an institution or group home RCL 12–14.

b. Defendant implicitly concedes that Medicaid eligible children under age 21 have been denied mental health services, including TBS, to which they are entitled. Dec. JSR, p. 3; FAC, ¶¶ 74–76.

c. Defendant further concedes that the "MHPs should consider the entire range of specialty mental health services[,] including TBS[,] prior to placements" in a RCL 12 facility or higher when the MHP is involved in the placement decision. Opp., p. 19. Defendant states that "DMH will make that expectation clear through policy communications to the MHPs, and will provide oversight to ensure that it occurs." Opp., p. 20.

5. Conclusion

a. Plaintiffs' request is granted.

b. Defendant shall adopt and implement procedures to ensure that prior to the placement of a class member in Metropolitan State Hospital, Napa State Hospital, a RCL 12 facility (when the MHPs are "involved" in the placement) or in any RCL 13 or 14 facility or an Institution for Mental Diseases, a form shall be completed by a qualified mental health prac-

titioner certifying to the consideration of TBS for the child and the reason(s) for denying and/or not providing this mental health service for the child. Such certification need not be performed when children are committed by order of a court. An MHP is "involved" in the RCL 12 placement if:

  i. The MHP has participated in an interagency review prior to placement,

  ii. The child is receiving MHP services or has received an MHP assessment and the MHP participates in the placement discussion, or

  iii. The MHP has done a screening or assessment prior to placement under the provisions of SB 933.

c. Defendant shall adopt and implement similar procedures concerning completion of this certification form at all regularly scheduled placement review meetings for class members at Metropolitan State Hospital and Napa State Hospital.

d. In addition to the following, the certification form shall describe the reason(s) with sufficient specificity to enable the minor or his/her de facto or authorized representative to understand why TBS was not provided. The certification form shall certify one of the following statements, as recommended by the parties' consultants:

  i. To the best of the MHP's knowledge, the child would not be eligible for Medi–Cal while at home, and therefore the child would not be eligible for TBS while at home, or

  ii. TBS has been provided and the placement is still required, or

  iii. TBS has been considered and:

  (A) Has been determined to be inappropriate, or

  (B) Is appropriate, but is not available, or

  (C) Is appropriate, but was refused by family/caregiver or the beneficiary.

e. Completion or failure to complete this form shall not prevent an otherwise appropriate placement.

f. Defendant shall ensure that a copy of the TBS certification form is provided to the child, at least one adult who is a *de facto* or legally authorized representative of the child, if there is any such adult, the child's court-appointed attorney, if any, and the child's social worker, if any.

g. MHPs must retain a copy of all TBS certification forms and make these forms accessible and available for annual on-site compliance reviews by Defendant. During such reviews, a statistically significant sample of forms shall be reviewed.

h. This provision is effective 90 days from entry of this Permanent Injunction.

## VII. CHILDREN IN STATE HOSPITALS

### A. About Metropolitan and Napa State Hospitals

1. Metropolitan and Napa State Hospitals are among the two most restrictive, non-criminal mental health institutions for children and youth in California. JSF, p. 10. Children are generally placed at Metropolitan

or Napa State Hospitals after they have had multiple failed placements in less restrictive settings. *Id.*

2. DMH evaluates each potential admission to a state hospital. *Id.* at 8. The hospital's decision to admit a patient is dependent on many factors, including the history of success or failure in prior placements and treatment settings. *Id.* DMH does not require as a condition of admission, that the MHP provide any specific assurances that other less restrictive placements have been tried. *Id.*

3. The cost of maintaining a child at Metropolitan State Hospital or Napa State Hospital averages more than $100,000 per year. *Id.* The current maximum per diem rate, without ancillary services, that will be paid for maintaining a child at Metropolitan State Hospital in the Children's Program is approximately $377.00 per day. *Id.* at 9. (Defendant contends that this payment is made by Medi-Cal, and that federal and State General Funds each provide approximately 50% of the amount.)

4. DMH admits children between 18 and 21 years to Napa State Hospital and children under age 21 to Metropolitan State Hospital. *Id.*

5. The operating capacity in Program I (for children and youth under the age of 18) at Metropolitan State Hospital is 120 beds. In September 1999, the census in Program I was approximately 100 children. *Id.* at 8.

6. There are also patients under age 21 in the adult units of Metropolitan State Hospital and Napa State Hospital. *Id.* As of June 30, 2000, 125 children were in the Metropolitan and Napa state hospitals. JSRDO at 5. As of this same date, Metropolitan and Napa state hospitals respectively held 28 and 7 children under the age of 21 that were not judicially committed. *Id.* at 6.

7. Children and youth placed at Metropolitan State Hospital and Napa State Hospital are in the custody of DMH and are cared for by state DMH employees. *Id.*

8. TBS cannot be provided to a beneficiary while in an acute inpatient psychiatric hospital program. Preliminary Injunction. Acute inpatient psychiatric hospital programs are those programs licensed and certified to provide "acute psychiatric inpatient hospital services" as defined in Cal.Code Regs. tit. 9, § 1810.201 ("those services provided by a hospital to beneficiaries for whom the facilities, services and equipment described in Section 1810.350 are medically necessary for diagnosis or treatment of a mental disorder in accordance with Section 1820.205").

**B. Assessment of Whether Class Members at Metropolitan and Napa State Hospitals Would Benefit From TBS**

1. Plaintiffs request that Defendant retain a consultant with experience in TBS as well as behavior analysis and positive behavior interventions to conduct an assessment of each child and youth under the age of 21 at Metropolitan and Napa State Hospitals to determine whether they would benefit from TBS. Motion, p. 20.

2. Plaintiffs' Position

   a. Plaintiffs argue that although all the children in the state mental hospitals are class members, the state has not ensured that they

will be considered for TBS benefits. Motion, p. 19.

    i. Defendant has not required that MHPs review the children they have placed in state hospitals to see whether they need TBS or what steps the MHP has taken, if any, to assess them for TBS. *Id.*

    ii. As a result, not a single TBS assessment has been done for any child at Metropolitan or Napa State Hospitals. *Id.*

  b. Plaintiffs argue that TBS has not been considered in the discharge planning process in the past. Reply pp. 21–22. Specifically, state hospital clinicians do not have the training and experience necessary to undertake the behavioral assessments needed to determine who would benefit from TBS. *Id.*

  c. Plaintiffs' expert, Dr. Willis, met with the staff at Metropolitan State Hospital regarding TBS. Reply, p. 21. He noted that the staff lacked training, experience and personnel to carry out a TBS assessment. *Id.*

3. Defendant's Position

  a. Defendant attempts to offer evidence from Defendant's Exhibit 530 to support her position. Def. FFCL, pp. 58–59. As discussed above, Defendant's Exhibit 530 is hearsay and, therefore, inadmissible when offered by Defendant.

  b. Defendant contends that Plaintiffs' request is unnecessary. Opp., p. 20.

4. In the Order Regarding Class Certification and Preliminary Injunctive Relief issued on May 4, 1999, Judge Keller stated:

"Members of the plaintiff class shall not be eligible to receive therapeutic behavioral services during their residency in Institutions for Mental Disease which disqualify them from receiving Medi–Cal services. However, while in such facilities, members of the plaintiff class will be able to establish their eligibility for therapeutic behavioral services immediately upon leaving the Institution for Mental Disease." Dec. JSR, p. 3.

5. Conclusion

  a. Defendant shall retain at least one mental health care practitioner who meets the qualifications set forth below and is mutually agreeable to the parties to be available to prepare an assessment of each class member who has been placed at Metropolitan State Hospital or Napa State Hospital for three months or more. The assessment will address the feasibility of providing TBS to enable the child to transition to a less restrictive level of care at discharge. The parties shall identify mutually agreeable mental health care practitioners within thirty days of entry of this Permanent Injunction. All assessments shall be completed and copies made available to Plaintiffs' counsel and the applicable MHP within 180 days of entry of this Permanent Injunction, or by a later date if the parties so stipulate.

  b. The mental health care practitioner(s) must possess qualifications that include training in behavior analysis with an emphasis on positive behavior interventions.

## C. TBS To Facilitate Transition

1. Plaintiffs request that Defendant provide TBS services as a transition for children and youth in state hospitals so that they can receive TBS

prior to discharge when the MHP responsible for the child determines that TBS is medically necessary to facilitate the transition of the child to a less restrictive placement. Pl. Proposed Judgment, para. 21, p. 5

a. Defendant will not reimburse counties for providing TBS services to Medi–Cal eligible children placed at Metropolitan State Hospital during the time that the children are not on hospital grounds. JSF # 43.

b. Defendant does not dispute that the state hospitals do not provide transitional TBS. Def. FFCL, # 15, p. 50.

2. Defendant's Position

a. Further, Defendant states that the hospital would not be reimbursed for transitional TBS provided as part of the hospital's overall care because the per diem rate is already inadequate to cover the services provided by the hospital. Opp., p. 22. "Adding TBS costs to the current per diem cost would not result in any increase in federal reimbursement from the Medi–Cal program." Opp., p. 22.

b. Defendant attempts to offer evidence from Defendant's Exhibit 530 to support her position. As discussed above, Defendant's Exhibit 530 is hearsay and, therefore, inadmissible when offered by Defendant.

3. Plaintiffs' Position

a. Plaintiffs do not dispute that Defendant's policy is not to seek federal Medicaid reimbursement for transitional TBS provided by MHPs when children are not on the hospital grounds. Reply, p. 22. Instead, they argue that Defendant must adjust the State's system to permit the MHPs to be reimbursed for transitional TBS as an ancillary service when medically necessary, for example when the child cannot visit home without support or when the child needs to adjust to the TBS aide prior to discharge. Reply, p. 22.

Under Cal.Code of Regs., tit. 9, § 1810.355(a)(3), the MHPs have an obligation to provide necessary mental health services not provided by a hospital operated by either the DMH or the state Department of Developmental Services. Pl. FFCL # 155, 157. Since the hospitals will not provide transitional TBS, especially when a child is off hospital grounds, the MHPs are responsible and should be reimbursed.

b. Plaintiffs argue that Defendant's reason for not reimbursing MHPs through the Medi–Cal system for providing TBS to class members in state hospitals prior to discharge is that said state hospital residents are being funded at per diem rates. Pl. FFCL, p. 127.

However, Plaintiffs contend that payment to the MHPs for transitional TBS would not be duplicative of the services provided by hospitals under the per diem rate, since TBS is not available from the hospital. Moreover, the hospitals will not provide any staffing assistance to children who are off hospital grounds on home visits, which is when children are most likely to need transitional TBS.

Plaintiffs argue that federal law permits reimbursement for non-duplicative ancillary services. Plaintiffs contend that MHPs should be reimbursed for providing transitional TBS as an ancillary service in similar situations, such as when the child is off grounds on a home visit or leave and

the hospital is receiving the administrative day rate.

c. Defendant approves and funds most of the time spent by class members in state mental hospitals as Medi–Cal skilled nursing facility days at a per diem rate rather than as acute care days. *Id.*

d. Plaintiff contends that Defendant is able to modify its procedures so that MHPs can be reimbursed from Medi–Cal for providing medically necessary TBS to state hospital residents prior to discharge when these services are not duplicative such as when they are on home visits or otherwise not on the grounds of the institution. Pl. FFCL, p. 128.

4. Analysis

a. Plaintiffs fail to cite any federal case law, statutes or regulations to demonstrate that such a request would be required by federal law. Plaintiffs cite only to 42 U.S.C. § 1396d(r)(5) for the general proposition that Defendant is obligated to provide class members with medically necessary EPSDT services.

b. In the Order Regarding Class Certification and Preliminary Injunctive Relief issued on May 4, 1999, Judge Keller stated:

"Members of the plaintiff class shall not be eligible to receive therapeutic behavioral services during their residency in Institutions for Mental Disease which disqualify them from receiving Medi–Cal services. However, while in such facilities, members of the Plaintiff class will be able to establish their eligibility for therapeutic behavioral services immediately upon leaving the institution for Mental Disease." Dec. JSR, p. 3.

c. Plaintiffs admit that the federal government would not currently reimburse the state for transitional TBS. Reply, p. 22. Therefore, transitional TBS would not be required under Medicaid. Instead, Plaintiffs want Defendant to change existing state Medi–Cal law to make the state eligible to receive federal reimbursement for transitional TBS.

d. Plaintiffs' request is required by federal law when the MHP determines that transitional TBS is medically necessary and is not available from the hospital.

5. Conclusion

The Court grants Plaintiffs' request for transitional TBS (1) when medically necessary, (2) when TBS for the class member is not duplicative of other Medi–Cal services and (3) if Defendant's procedures could be modified to entitle her to receive federal Medicaid reimbursement.

## VIII. CONTINUING TBS BENEFITS PAST AGE 21

**A. Providing TBS to Class Members Beyond Their Twenty–First Birthday If They Are In the Midst of Treatment**

**Plaintiffs have withdrawn this request.**

**B. Compensatory TBS to Class Members Who Have Been Wrongfully Denied this Mental Health Service**

1. Plaintiffs request that Defendant provide compensatory TBS to class members who have been wrongfully denied this necessary mental health service, with services to continue past age twenty-one in appropriate

instances. Motion, p. 27. Plaintiffs contend that such relief is feasible:

Compensatory TBS is very feasible. . . . The request would identify the evidence in the child's records and history indicate that the young person met the class criteria within the specified time frame and that the child would have been appropriate for TBS had it been offered. This request should be submitted to the MHP for review. The MHP will determine in retrospect that TBS was withheld from the child based on the medical records and other evidence submitted by the TBS provider. This additional evidence might include letters or statements from the child's family, group home, the child him or herself, etc. If the MHP concludes that there is insufficient evidence that TBS was withheld in the past or that TBS is not medically necessary now, it will issue a denial notice. The young person or the TBS provider may then appeal this denial through the administrative hearing process

The length of time TBS was withheld may not be relevant to this determination. If the MHP determines that the child is eligible for compensatory TBS, then the service should continue as long as medically necessary. JSRDO at 6–7.

2. Defendant's Position

a. Defendant contends that Plaintiffs' request for compensatory damages is equivalent to money damages and, as such, would violate the Eleventh Amendment. Opp., p. 23.

i. In a recent case also involving Medi–Cal, the Court of Appeals clearly stated that "[a]lthough the Eleventh Amendment precludes any action against state officers to recover past due payments, it does not preclude a suit against state officers for prospective relief from an ongoing violation of federal law." *Children's Hospital and Health Center v. Belshe,* 188 F.3d 1090, 1095 (9th Cir.1999); *see also Florida Dep't Of Health and Rehabilitative Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 148–50, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (finding the Eleventh Amendment barred plaintiff nursing homes' recovery of "retroactive relief in the form of payments by the State of the difference between the reimbursement they had received [under Medicaid as administered], and the amounts they would have received under [Medicaid as properly administered]").

ii. Furthermore, casting the remedy in the form of "equitable restitution" instead of damages does not avoid Eleventh Amendment concerns when an award of monetary relief will (1) "be paid from state funds" and (2) be "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

b. Federal Financial Participation for EPSDT services is not allowable for children after their twenty-first birthday. Opp., pp. 24–25. The conclusion Defendant therefore urges based on the foregoing is that compensatory TBS would be "monetary relief" funded from the state treasury in contraven-

tion of the Eleventh Amendment. *See* Def. Exceptions at 7.

c. Defendant also contends that the provision of Compensatory TBS is not feasible:

Compensatory TBS ("Comp TBS") is not administratively feasible because it would require that a qualified person be identified today as to conditions, situations and emotions that could change substantially over a two year period of time thus making it impossible to assume based on current circumstance that the child/youth would have needed TBS two years ago. Further, even if it were possible to determine the circumstances which indicated such short term intensive treatment might have been needed two year[s] ago, there is no reason to assume that such services would currently be useful. If the child doesn't need TBS today it doesn't make sense to grant Comp TBS based on an old TBS assessment because the child doesn't need the service today. If the child needs TBS today the MHP will authorize—if medically necessary—regardless of what an old TBS assessment states so Comp TBS wouldn't be an issue. It seems to DHS that the only child affected by Comp TBS would be the child who may not be eligible for TBS because he or she is not Medi–Cal full scope anymore or they are over 21 which PAI agreed to withdraw. Defendant has objected to this portion of the tentative, and incorporates herein those arguments. JSRDO at 7.

3. Analysis

■ a. Defendant has agreed that judgment be entered against her on all claims in the FAC. Dec. JSR, p. 3. In the FAC, Plaintiffs allege (1) that Medicaid eligible children under age 21 have been denied mental health services to which

they are entitled, (2) that Defendant failed to effectively inform children and their families of the mental health services to which they are entitled and (3) that Defendant failed to ensure that there are providers qualified and willing to provide the mental health services to which they are entitled. FAC, ¶¶ 74–76.

b. "Where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). It has been held that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 70, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (held that damages remedy was available to high school student suing under Title IX alleging sexual harassment and abuse by teacher).

c. Case law under the Individuals with Disabilities Education Act ("IDEA") is helpful in determining the appropriate remedy in this case.

i. In cases brought pursuant to IDEA, the courts have granted compensatory education to disabled children who were denied appropriate educational opportunities. *Parents of Student W. v. Puyallup Sch. Dist.,* 31 F.3d 1489, 1496 (9th Cir.1994); *Miener v. State of Missouri,* 800 F.2d 749, 752–54 (8th Cir.1986); *Pihl v. Massachusetts Dept. of Educ.,*

9 F.3d 184, 187–89 (1st Cir. 1993).

ii. Imposing liability for compensatory educational services on the Defendants "merely requires [them] to belatedly pay expenses that [they] should have paid all along." *Miener*, 800 F.2d at 753 (citations omitted).

iii. In *Pihl*, the First Circuit explained the rationale behind this policy: "Common sense commands such a conclusion. In order to give meaning to a disabled student's right to an education between the ages of three and twenty-one, compensatory education must be available beyond a student's twenty-first birthday. Otherwise, school districts simply could stop providing required services to older teenagers, relying on the Act's time consuming review process to protect them from further obligations." *Pihl*, 9 F.3d at 189.

d. Compensatory TBS is appropriate in this case.

i. Defendant has conceded liability on all claims in the FAC. Those claims include that Medi–Cal eligible children under age 21 have been denied mental health services to which they are entitled.

ii. The rationale from the IDEA cases applies here. Unless the State can be required to provide compensatory TBS beyond a beneficiary's twenty-first birthday, a State could simply stop providing TBS to older children relying on the fact that compensatory TBS will not be required. *Cf. Pihl*, 9 F.3d at 189.

iii. The Eleventh Amendment argument advanced by Defendant is inapposite. Compensatory TBS is not the compensatory "monetary relief" forbidden by the Eleventh Amendment cases, but rather represents a proper equitable remedy. Compensatory TBS is not transformed into a damages award simply because it will involve the expenditure of state funds. *See, e.g., Edelman*, 415 U.S. at 668, 94 S.Ct. 1347.

4. Conclusion

a. Defendant shall ensure that compensatory TBS is provided to all class members who were entitled to receive TBS, but did not receive this mental health service, for a time period beginning one year prior to the filing of this lawsuit on May 27, 1998. The conditions for compensatory TBS eligibility shall be as follows:

i. Defendant must only provide compensatory TBS to any given patient as long as medically necessary, but in no case shall Defendant be required to provide compensatory TBS for a time period greater than that between May 27, 1997 and the date this Permanent Injunction was entered.

ii. A TBS provider must request compensatory TBS for the patient.

iii. There must be evidence that an incorrect action was taken in failing to provide TBS to an otherwise eligible patient prior to his/her 21st birthday.

iv. The applicable MHP determines that TBS was incorrectly denied.

v. The applicable MHP determines that the patient would currently meet the eligibility criteria for TBS but for the fact that he/she is over age 21.

b. Disputes about whether particular people qualify for compensatory TBS will be resolved in the same manner that other Medi–Cal necessity disputes are resolved—*i.e.,* through administrative fair hearing and mental health plan grievance procedures. Pl.Memo, p. 7 n. 4.

## IX. ESTABLISHING MINIMUM PROVIDER QUALIFICATIONS AND MONITORING THE NUMBER OF PROVIDERS

### A. Minimum Provider Qualifications

1. Plaintiffs request that Defendant establish minimum provider qualifications for the providers who evaluate class members' need for TBS and who provide TBS to class members because making TBS assessments and providing TBS require specialized training.

2. Plaintiffs' Position

a. "Behavior intervention services such as TBS must be based on a comprehensive assessment of the child's problem behaviors and the development of a set of interventions to replace them with more positive, adaptive behaviors." Motion, p. 28.

b. "This process requires specialized training in behavior analysis and positive behavior support and intervention above and beyond that normally provided to mental health clinicians." *Id.*

c. "A poorly developed behavior intervention plan could be ineffective or even harmful to a child." *Id.*

d. "Without [proper] training, a staff person 'might conclude that a child's behaviors were hopeless and unmanageable.' " *Id.*

3. Defendant's Position

a. Provider qualifications are governed by the California Code of Regulations. As such, the entity providing TBS "must meet the statewide provider selection criteria specified in 9 C.C.R. § 1810.435." Opp., p. 27 (citing J.Exh. 137, p. 100).

b. 9 C.C.R. § 1810.435 provides that "[e]ach MHP shall establish individual, group, and organizational provider selection criteria that comply with the requirements of this section ... [as well as] [m]eet any additional requirements established by the MHP as part of a credentialing or other evaluation process." 9 C.C.R. § 1810.435. Among these requirements, the MHPs must select individual or group providers with which to contract that have the following qualifications:

i. "[I]ndividual or group providers ... shall ... possess the necessary license or certification to practice psychotherapy independently. Each individual practicing as part of a group provider shall possess the necessary license or certification."

ii. "[O]rganizational providers ... shall ...

(1) Possess the necessary license to operate.

(2) Provide for appropriate supervision of staff.

(3) Have as head of service a licensed mental health professional or

other appropriate individual as described in Sections 622 through 630." Cal.Code Regs.Tit. 9, § 1810.435.

    iii. Section 1810.435 further provides that the MHP shall certify that "a provider other than the MHP meets the applicable criteria in [this section] prior to the provision of specialty mental health services under this chapter." 9 C.C.R. § 1810.435.

4. Analysis

    a. Defendant has conceded liability on all claims in the FAC. Those claims include that Defendant has failed to "ensure that there are providers [who] are qualified and willing to provide" the mental health services to which Plaintiffs are entitled. FAC ¶ 76.

    b. Because Defendant has conceded that she has failed to ensure that there are providers qualified and willing to provide TBS, and because a lack of qualified providers makes provision of TBS difficult if not impossible, the Court grants Plaintiffs' request.

5. Conclusion

    a. Defendant shall, in consultation with state licensing boards and MHPs, adopt standards for minimum qualifications for mental health practitioners to assess and/or provide TBS to class members, including training in behavior analysis with an emphasis on positive behavioral interventions.

    b. Defendant shall not require that these mental health providers be existing participants in the Medi–Cal program or that these providers agree to participate in the Medi–Cal program for any other purpose besides assessing eligibility for TBS and/or providing TBS. Defendant shall inform all such

providers of the procedures for contracting with the MHP to receive Medi–Cal EPSDT reimbursement pursuant to this Permanent Injunction and 22 C.C.R. § 51242, which specifies the qualifications required of an EPSDT supplemental services provider. This provision does not require Defendant or any MHP to appoint and/or compensate as a provider any person or entity who or which would not otherwise be eligible to provide services to class members.

"The parties agree and stipulate that it will not be burdensome for an MHP to allow a provider to participate in its managed care Medi–Cal program solely to provide TBS and no other service. Several counties have done so already. More generally, the contracts between the MHP and a provider specifically list the services the provider is authorized to provide, so limiting a provider to one service is not unusual. However, because of the nature of California's managed care waiver, the MHP has the discretion to select the providers with which it chooses to contract. Not every provider which wishes to provide TBS may be approved to do so by the MHP, as long as there is a sufficient number of TBS providers available." JSRDO at 8.

## B. Monitoring Adequacy of Number of Providers

1. Plaintiffs request that MHPs maintain lists of approved TBS providers and report this information to the Defendant.

2. Plaintiffs' Position

    a. Plaintiffs assert that maintaining a list of TBS providers will assist families and even other mental

health providers who are attempting to secure these services for a child. Motion, p. 29.

b. Plaintiffs also contend that the lists should be reported to Defendant to ensure that the agency knows when an MHP has inadequate provider capacity or even no providers, so that it can take corrective action. *Id.*

3. Defendant's Position: Defendant attempts to offer evidence from Defendant's Exhibit 530 to support her position. As discussed above, Defendant's Exhibit 530 is hearsay and, therefore, inadmissible when offered by Defendant

4. Analysis

a. Defendant has conceded liability on all claims in the FAC. Those claims include that Defendant has failed to "ensure that there are providers [who] are qualified and willing to provide" the mental health services to which Plaintiffs are entitled. FAC, ¶ 76.

b. Under 42 C.F.R. § 441.61(b), "[DHS] must make available a variety of individual and group providers qualified and willing to provide EPSDT services."

c. The California Code of Regulations imposes a similar requirement on MHPs: "Whenever feasible, the MHP of the beneficiary . . . shall provide a beneficiary who has been determined by the MHP to meet the medical necessity criteria for . . . EPSDT supplemental specialty mental health . . . services an initial choice of the person who will provide the service to the beneficiary." 9 C.C.R. § 1830.225(a).

d. Because Defendant has conceded that she has failed to ensure that there are providers qualified and

willing to provide TBS, and because a lack of providers makes provision of TBS difficult if not impossible, and further precludes providing a "choice" of providers as required by Title 9 of the California Code of Regulations, the Court grants Plaintiffs' request.

5. Conclusion

a. Defendant shall ensure that class members have access to TBS within their respective MHPs. Defendant shall require each MHP with at least one class member to provide a list of the TBS providers or provider within the MHP. Creation of lists would be necessary in order for parties to comply with the other provisions under Section IX.B.5. Provider lists will also be required by the new federal Medicaid Managed Care Regulations. 42 C.F.R. § 438.10(e)(2)(iv) (effective April 19, 2001). An MHP has the obligation to enroll a sufficient number of providers to assess eligibility for TBS and/or to provide TBS to class members in its jurisdiction and Defendant has an obligation to ensure that the MHP expands its provider network or take other measures if necessary for that MHP to meet its obligations to TBS class members in its jurisdiction. If necessary, Defendant shall assist the MHPs to compile a list of mental health providers qualified, willing and logistically capable of providing TBS to children within the area served by each MHP.

b. "The parties have agreed to refer the question of defining and ensuring needed capacity and access to the consultants for a joint rec-

ommendation as stated above. In the interim, the parties agreed that if there are no class members in a particular county, then the sufficient number of providers would be zero. The parties also agree that the number of 'providers' is not significant, since an MHP may contract with a single large institutional provider with the capacity to serve scores of children." JSRDO at 12.

c. The parties shall cooperate to monitor capacity and access on an ongoing basis for three years from the date of entry of this Permanent Injunction. They shall, at a minimum, review on an annual basis all available TBS statistics collected (1) by each MHP or (2) about the TBS services provided by each MHP. The parties shall work with any MHP that fails to provide sufficient access to TBS for class members, with the goal of attaining compliance with this Permanent Injunction and other applicable laws. Either party may petition for intervention of the Court in the event sufficient access to TBS cannot timely be achieved through cooperation of the parties with the MHPs. The Court would then consider appointing a special master to oversee capacity and access issues.

## X. MONITORING THE MHPs' PROVISION OF TBS TO CLASS MEMBERS, TAKING CORRECTIVE MEASURES WHEN NECESSARY, AND REPORTING TO PLAINTIFFS' COUNSEL

A. Plaintiffs request that Defendant require reports from the MHPs on all new requests for TBS for class members (regardless of how such requests are made) and a breakdown of how many of these requests were approved or denied.

1. As of January 2001, 19 counties had not approved TBS for a single child and an additional 9 counties had approved TBS for only one or two children.

2. Defendant has already stipulated that DHS shall require the MHPs to provide copies of all written notices which deny, terminate or suspend TBS for members of the class; DMH shall require MHPs to submit a form documenting the approval of TBS for members of the class; and DMH shall provide copies of the denial notices and the approval forms to Plaintiffs' counsel on a quarterly basis.

3. Plaintiffs' request that Defendant create and distribute TBS request forms to enable class members to directly request TBS and Plaintiffs' request for denial notices to be sent regarding those requests were denied. (*See* Section VI(A) and (B) above.)

4. Insofar as there are written forms approving and denying TBS within the current Medi–Cal system, Defendant shall collect from each MHP the following:

   a. copies of all written forms approving TBS for class members; and

   b. copies of all written notices denying, terminating or suspending TBS for class members.

5. Defendant shall forward this information to Plaintiffs' counsel on a quarterly basis beginning on March 30, 2001 and ending on March 30, 2004.

B. Plaintiffs request that Defendant require the MHPs to forward all the forms certifying that TBS was considered and deemed inappropriate for class members prior to their placement in Metropolitan

State Hospital, Napa State Hospital or a RCL 12 facility or higher.

1. Pursuant to the discussion in Section VI(C), Plaintiffs' request is granted.

2. Defendant shall forward a copy of this information to Plaintiffs' counsel on a quarterly basis beginning on March 30, 2001 and ending on March 30, 2004.

C. Plaintiffs request that Defendant require the MHPs to provide her with updated lists of the local mental health providers who are qualified and willing to assess and/or provide TBS to class members.

1. Pursuant to the discussion in Section IX(B), Plaintiffs' request is granted.

2. Defendant shall forward this information to Plaintiffs' counsel on a quarterly basis beginning on March 30, 2001 and ending on March 30, 2004.

D. Plaintiffs request that Defendant require reports from the MHPs on the status of any training in TBS for interested parties within the county as well as any problems in evaluating or delivering TBS to class members.

1. Plaintiffs and Defendants have stipulated to entry of the following in the permanent injunction: DHS shall provide, or arrange through others to provide, ongoing training and technical assistance to the MHPs, as well as to the staff at Metropolitan State Hospital and Napa State Hospital regarding the provision of TBS services; in the design and delivery of this training, DHS shall consult with staff of the California Department of Social Services who have developed training regarding wraparound services pursuant to Senate Bill 163;

2. Plaintiffs' request is granted.

3. Defendant shall forward lists of training provided to MHPs, by

DMH or the California Institute for Mental Health Services, to Plaintiffs' counsel on a quarterly basis beginning on March 30, 2001 and ending on March 30, 2004.

E. Plaintiffs request that Defendant take appropriate corrective measures with regard to MHPs where either no class members or a disproportionately low number of class members have been approved for TBS.

1. Plaintiffs and Defendant have stipulated that the following are to be considered "appropriate corrective measures" in the permanent injunction, *see* JSRDO at 12–13:

a. Technical assistance and the remedies in the state mental health managed care regulations are appropriate—including site visits and monitoring, imposition of corrective action plans, termination of the MHP's managed care contract and civil penalties against the MHP of up to $5,000. Cal. Code of Regs., tit. 9, § 1810.325, 1810.38, 1810.385.

b. For any given MHP in which no class members or a disproportionately low number of class members have been approved for TBS and a legitimate reason for such statistics is not readily apparent, Defendant shall provide technical assistance to identify specific barriers, strategies to overcome barriers, resources needed, interim solutions and time lines for resolution of issues.

2. Defendant shall forward to Plaintiffs' counsel on a quarterly basis beginning on March 30, 2001 and ending on March 30, 2004 a description of the corrective measures it has undertaken, if any, and a description of the impact of those measures.

## XI. PROTECTIVE ORDER

This Order incorporates by reference the Protective Order Re: Confidentiality attached hereto as Exhibit A, the original of which shall be separately entered.

## XII. CONTINUING JURISDICTION

The Court retains jurisdiction over the enforcement of this injunction for three years from the date it is entered. Should any part of this injunction become substantially unworkable or infeasible due to unforeseen circumstances, either party may move to modify the terms of this injunction.

## XIII. FINDINGS OF FACT AND CONCLUSIONS OF LAW

All of the foregoing constitute the Court's findings of fact and conclusions of law. To the extent that factual recitals also constitute legal conclusions and to the extent legal conclusions also constitute factual recitals, such recitals, findings and conclusions shall be so construed.

IT IS SO ORDERED.