**Lexen PITTMAN, by his next friend, Ramona POPE, Plaintiff–Appellant,**

v.

**SECRETARY, FLORIDA DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, Defendant–Appellee.**

No. 93–4783.

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1993.

Mary Anne Robertson, Legal Aid Service of Broward County, Fort Lauderdale, FL,

William Kimble, Fort Worth, TX, for plaintiff-appellant.

Gordon B. Scott, Tallahassee, FL, for defendant-appellee.

Before ANDERSON, EDMONDSON and COX, Circuit Judges.

PER CURIAM:

Lexen Pittman, through his mother Ramona Pope, as his next friend, brought this 42 U.S.C. § 1983 action alleging that the Secretary of the Florida Department of Health and Rehabilitative Services ("the Secretary") deprived him of rights to which he is entitled under 42 U.S.C. §§ 1396–1396u (West 1992) ("the Medicaid Act"). He sought a preliminary injunction requiring the Secretary to pay for a liver-bowel transplant and incidental treatment. The court denied his request for a preliminary injunction. He appeals.

Lexen filed a motion to expedite the appeal on July 23, 1993, which we granted. Due to the exigency of the situation, we heard oral argument on July 28. On July 29, we entered an order vacating the order of the district court and remanding the action with instructions to enter an appropriate preliminary injunction.[1] We noted in that order that the preparation and filing of a comprehensive opinion was deferred to expedite disposition of the appeal, but that we would file a comprehensive opinion forthwith. We now do so.

## FACTS AND PROCEDURAL HISTORY

The facts in this case are essentially undisputed. Lexen is a fifteen-month old child, who has received medical assistance through Florida's Medicaid program. He was screened under the state's early and periodic screening, diagnostic and treatment (EPSDT) program on April 29, 1992, the day

---

1. That order follows this opinion as an Appendix.

after his birth.[2]

Lexen suffers from short-bowel syndrome. As a result of his illness, Lexen's body is unable to absorb nutrients. He is, therefore, completely dependent upon total parenteral nutrition, a form of intravenous feeding. Total parenteral feeding compromises his liver function. His doctors believe that a liver-bowel transplant could save Lexen's life. The cost of the transplant procedures is estimated to be between $300,000 and $500,000, or more, depending upon post-operative complications, length of hospital stay, and other unpredictable factors. (R.1–22 at 10.) Without the transplant, he is likely to die of liver failure within one year. One of his doctors has also stated that he is immediately susceptible to a variety of infections, which could so worsen his condition that a liver-bowel transplant would not be recommended or feasible.

Lexen's mother applied to the Florida Department of Health and Rehabilitative Services (HRS) for coverage of a liver-bowel transplant and incidental medical treatment. The Secretary denied the request, contending that the transplant was experimental and, thus, Florida is not required to fund it. Following that denial, Lexen filed this action in district court, contending that the Secretary had denied him federal rights guaranteed by Medicaid. The plaintiff sought a preliminary injunction requiring the Secretary to provide funding for a liver-bowel transplant and incidental medical treatment, including transportation to the University of

Pittsburgh Children's Hospital for the surgery.

At a status conference, the Secretary advised the court that although HRS was not conceding that liver-bowel transplant procedures are not experimental, the Secretary would not defend the denial of the transplant in this case by arguing that it is experimental. (District Court Opinion, R.1–22 at 2.) Rather, the Secretary represented that HRS's only defense would be that the statute vests Florida and other participating states with the discretion to exclude transplant coverage for Medicaid recipients, regardless of their age, and that Florida has not elected to include liver-bowel transplants. (Id.) The district court held first, that the Medicaid Act does not require states to cover all medically necessary treatment for eligible participants under age twenty-one. Alternatively, 42 U.S.C. § 1396b(i)(1) gives states the discretion not to provide transplant services for such recipients. The court, therefore, denied the request for a preliminary injunction.

## ISSUE ON APPEAL AND CONTENTIONS OF THE PARTIES

On this appeal, the Secretary presents a single argument: He argues that 42 U.S.C. § 1396b(i)(1), a subsection of the Medicaid Act, gives Florida discretion to elect not to provide payment for a liver-bowel transplant and incidental medical treatment for Lexen Pittman, a qualified Medicaid recipient under age twenty-one. Lexen disagrees, arguing that the states have no such discretion.[3]

---

2. Section 1396d(a)(4)(B) of the Medicaid Act requires participating states to provide EPSDT services to eligible recipients under age 21. On April 1, 1991, Florida amended its state Medicaid plan by adding a provision which includes the following:

> EARLY AND PERIODIC SCREENING AND DIAGNOSIS OF INDIVIDUALS UNDER 21 YEARS OF AGE, AND TREATMENT OF CONDITIONS FOUND:
> All services provided for in 42 U.S.C. § 1396d(a) which are medically necessary to correct or ameliorate defects and physical and mental illnesses and conditions are provided for EPSDT participants.
> (4a) 1. Screening examinations are scheduled to occur at birth, two months, four months, six months, . . . .

3. In opposing Lexen's assertion that 42 U.S.C. § 1396d(r)(5) requires funding for this transplant, the Secretary argues that § 1396b(i)(1) gives the states discretion to elect not to cover organ transplants for children under age twenty-one. We address and reject that argument in the text. Thus, we need not, and we expressly do not, address other possible issues, including, but not limited to: (1) whether the decision to exclude liver-bowel transplants from coverage under the state plan was made pursuant to reasonable standards consistent with the Medicaid Act appropriately imposed by the state pursuant to 42 U.S.C. § 1396a(a)(17), see Beal v. Doe, 432 U.S. 438, 444–45, 97 S.Ct. 2366, 2370–71, 53 L.Ed.2d 464 (1977); (2) whether this transplant is medically necessary; (3) whether "necessary health care" in § 1396d(r)(5) means reasonable health care so that the total circumstances, in-

## STANDARD OF REVIEW

We review the district court's denial of a preliminary injunction for abuse of discretion. *Tally–Ho, Inc. v. Coast Community College District,* 889 F.2d 1018, 1022 (11th Cir.1989). If the district court denies a preliminary injunction based on an error of law, then we must correct that error without deference to the court's determination of the legal issue. *Id.* at 1022.

## DISCUSSION

The Medicaid Act establishes a state and federal cooperative program, in which states may choose to participate. Once the state agrees to participate in the program, it must establish a plan that meets stated requirements. Through Medicaid participation, the state is eligible to receive federal funds to cover a percentage of the cost of the medical services it provides. As a requirement of participation, the state must provide certain types of services to lower income individuals.[4] These services include but are not limited to inpatient hospital services, outpatient hospital services, nursing services, physician's services, and early and periodic screening, diagnostic, and treatment services (EPSDT) for qualified aid recipients under age twenty-one. *See* 42 U.S.C. § 1396d(a)(1) to (5), (17), (21) (West 1992 & Supp.1993). Subsection (r)(5) of section 1396d provides:

> The term "early and periodic screening, diagnostic, and treatment services" means the following items and services:
>
> . . . .
>
> (5) Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, *whether or not such services are covered under the State plan.*

cluding (but not limited to) probability of a successful outcome would be considered even in cases in which a particular treatment offers the only possibility for the patient's survival; (4) what are the circumstances that may be considered if "necessary" in § 1396d(r)(5) means the same thing as reasonable; and (5) whether "discovered by the screening services" as used in

42 U.S.C.A. § 1396d(r)(5) (West 1992 & Supp.1993) (emphasis added).

Lexen contends that the above-quoted subsection (r)(5) entitles him to coverage for all necessary care, whether or not covered under Florida's medical assistance plan. Stated otherwise, he contends that subsection (r)(5) mandates coverage for all medically necessary treatment. The language of subsection (r)(5) appears to mandate coverage for all medically necessary treatment for eligible recipients under age twenty-one. *See Pereira v. Kozlowski,* 996 F.2d 723, 725 (4th Cir.1993); *McLaughlin v. Williams,* 801 F.Supp. 633, 637 n. 3 (S.D.Fla.1992).

Paragraph (1) of § 1396b(i) provides:

Payment under the preceding provisions of this section shall not be made—

> (1) for organ transplant procedures unless the State plan provides for written standards respecting the coverage of such procedures and unless such standards provide that—
>
>> (A) similarly situated individuals are treated alike; and
>>
>> (B) any restriction, on the facilities or practitioners which may provide such procedures, is consistent with the accessibility of high quality care to individuals eligible for the procedures under the State plan;
>
> . . . .
>
> Nothing in paragraph (1) shall be construed as permitting a State to provide services under its plan under this subchapter that are not reasonable in amount, duration, and scope to achieve their purpose.

42 U.S.C.A. § 1396b(i)(1) (West 1992 & Supp. 1993). This subsection can be read as merely stating conditions for federal funding of organ transplants. On the other hand, it can

§ 1396d(r)(5) is a phrase of limitation and, if so, what does it mean in application.

4. These services are described in § 1396d(a)(1) through (5), (17), and (21). *See* 42 U.S.C. § 1396a(a)(10).

be read as an affirmative grant to the states of discretion to elect not to provide coverage for organ transplants. Courts differ as to the proper construction.

The Eighth and Ninth Circuits have held that § 1396b(i)(1) gives discretion to the states to decide whether to fund organ transplants. *Meusberger v. Palmer*, 900 F.2d 1280, 1282 (8th Cir.1990); *Ellis v. Patterson*, 859 F.2d 52, 55 (8th Cir.1988); *Dexter v. Kirschner*, 972 F.2d 1113, 1117 (9th Cir.1992) (adopting the reasoning of the two Eighth Circuit cases). In so holding, those courts rely upon the legislative history of § 1396b(i)(1).[5] They read the legislative history to indicate Congress's intent that the states be given discretion to choose not to fund organ transplants.

The Fourth Circuit has rejected this interpretation of § 1396b(i)(1). *Pereira*, 996 F.2d at 724. The plaintiff in *Pereira*, a three-year old child, brought an action contending that the refusal of the state of Virginia to provide payment, through Virginia's Medicaid plan,

for a medically necessary heart transplant violated her rights under 42 U.S.C. §§ 1396d(a)(4)(B) and 1396d(r)(5). The Director of the Virginia Department of Medical Services ("Virginia Department") supported its denial of coverage with its interpretation of § 1396b(i)(1) as an affirmative grant of state·discretion regarding whether to provide coverage for organ transplants. *Id.* at 724. Disagreeing with the Virginia Department, the Fourth Circuit held that § 1396b(i)(1), by its plain terms, simply provides that federal payments will not be made for organ transplants unless the state has promulgated specified written procedures. *Id.* at 724. The court added that this subsection does not affirmatively confer upon the states the discretion to elect not to fund transplants. *Id.* Finding the statutory language to be clear and finding no inconsistent legislative history, the Fourth Circuit rejected the Eighth and Ninth Circuits' analysis. *Id.* at 725–727. The Fourth Circuit also noted that Congress inserted this subsection concerning written standards for organ transplants in section (i),

**5.** The only legislative history cited by these courts is the following:

> In its discussion of the amendment to this subsection added in 1987, House Report 100–391 states:
>> Organ transplant technical.—Under current law, States must offer certain mandatory services, such as inpatient hospital and physicians's services, each of which must be sufficient in amount, duration, and scope to reasonably achieve its purpose. States may not arbitrarily deny or reduce the amount, duration, or scope of a mandatory service solely because of an individual's diagnosis, type of illness, or condition. To assure that coverage decisions for organ transplants are based on clear principles consistently applied, and not on political or media considerations, section 9507 of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), P.L. 99–272, [the section herein at issue, 42 U.S.C. § 1396b(i)(1)] requires that a *State which covers organ transplant procedures* set forth under its Medicaid plan written standards respecting the coverage of such procedures. Under these standards, similarly situated individuals must be treated alike.
>> The Committee wishes to clarify that the organ transplant procedures which a state covers, and the hospital, physician, and other services these procedures entail, must be suffi-

cient in amount duration, and scope to reasonably achieve their purpose. For example, if a State covers liver transplants for patients with one medical condition but not for patients with another, and if liver transplant is medically indicated and not experimental with respect to each condition, the State's plan would be out of compliance with the amount, duration, and scope requirement. The Committee amendment would clarify that current law requirements for written standards respecting organ transplant procedures must not be construed by HCFA or the States to permit States to provide services that are not reasonable in amount, duration, and scope to achieve their purpose.
H.R.Rep. No. 100–391, 100th Cong., 1st Sess. (1987), U.S.Code Cong. & Admin.News 1987, 2313–1, 2313–352 (emphasis added). The House Conference Report on the same amendment states:
> (e) Organ Transplant Technical.—States *which choose to cover* organ transplant procedures may restrict the facilities or practitioners from whom Medicaid beneficiaries may obtain the services, so long as the restrictions are consistent with accessibility of high quality care, and so long as similarly situated individuals are treated alike....
H.R.Conf.Rep. No. 100–495, 100th Cong., 1st Sess. (1987), U.S.Code Cong. & Admin.News 1987, 2313–1502 (emphasis added).

which lists exclusions from federal funding.[6] *Id.* at 724. From that textual observation, the *Pereira* court concluded that subsection (i)(1) should be read, like subsections (i)(2) through (14), merely as an explanation of an instance in which federal payments will not be made. *Id.* at 725.

Based on the broad language of § 1396d(r) (the EPSDT provision), the *Pereira* court interpreted that subsection to require Medicaid participating states to pay for all medically necessary transplants for qualified recipients under age twenty-one. *Pereira*, at 725. The court, therefore, affirmed the district court's requirement that the Virginia Department fund the plaintiff's transplant.

The Eighth and Ninth Circuits did not address the EPSDT provisions in the cases in which they construed § 1396b(i)(1) to allow states to choose not to cover organ transplants. The Eighth Circuit decided *Ellis* before the 1989 amendment adding § 1396d(r)(5) to the statute. The issue of coverage under the EPSDT provisions was not before Eighth Circuit in *Meusberger* because the plaintiff was thirty-one years old. The Ninth Circuit did not address the issue in *Dexter*; we presume EPSDT coverage was not involved because of the age of the recipient.

Two district courts have considered the meaning of the EPSDT provisions. *Miller v. Whitburn*, 816 F.Supp. 505 (W.D.Wis.1993); *McLaughlin v. Williams*, 801 F.Supp. 633 (S.D.Fla.1992). In *McLaughlin*, Judge Marcus of the Southern District of Florida read § 1396d(r)(5) to "make 'necessary' medical treatment a substantive provision considering the extent of coverage for infants...." *McLaughlin*, 801 F.Supp. at 637 n. 3. The facts and legal issues in *Miller* are very similar to those presented by the parties in the case at bar. Chief Judge Crabb of the Western District of Wisconsin determined that Congress gave states the option to elect

not to cover organ transplants. *Miller*, 816 F.Supp. at 509. In so doing, like the Eighth and Ninth Circuits, she relied on the legislative history of § 1396b(i)(1). *Id.* Reading the facially broad language of the EPSDT provisions to contradict her understanding of § 1396b(i)(1), she looked for legislative history or administrative regulations that might clarify the scope of the EPSDT provisions. *Id.* at 510. Judge Crabb found neither to indicate that Congress intended to make a "sweeping" change; therefore, she concluded that the EPSDT provisions do not "make transplant procedures mandatory for eligible Medicaid recipients under 21 by superseding the states' statutory authority to decide whether they would cover the costs of organ transplants." *Id.* at 511.

We find the Fourth Circuit decision in *Pereira* to be the better reasoned one. We, like the Fourth Circuit, doubt that § 1396b(i)(1) gives the states discretion to elect not to cover organ transplants. It seems more likely that the subsection is a statement imposing conditions for federal funding of organ transplants, rather than an affirmative grant of discretion. We find persuasive the Fourth Circuit's analysis of the legislative history and its conclusion that that history is inconclusive. Furthermore, we find no conflict between §§ 1396b(i)(1) and 1396d(r)(5) that requires resort to legislative history. The Supreme Court explained in *Burlington Northern Railroad v. Oklahoma Tax Com'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987), that the language of the statute is controlling in the absence of exceptional circumstances or a clearly expressed legislative intention to the contrary.

We are not compelled, in this case, to decide the question of what, if any, discretion § 1396b(i)(1) grants to the states because of the clear mandate of §§ 1396d(a)(4)(B) and (r)(5). The language of § 1396d(r)(5) expressly requires Medicaid participating states to provide necessary treatment "to correct or ameliorate defects and physical

---

**6.** Subsection (i) begins with the heading "Payments for organ transplants; item of service furnished by excluded individual, entity, or physician; other restrictions." The subsection explains, for example, that federal payment will not

be made for services performed by a physician who fails to meet the statutory qualifications. 42 U.S.C.A. § 1396b(i)(14) (West 1992 & Supp. 1993).

**892**

... illnesses and conditions discovered by the screening services, *whether or not such services are covered under the State plan.* 42 U.S.C.A. § 1396d(r)(5) (West 1992 & Supp.1993) (emphasis added). Thus, even if § 1396b(i)(1) were construed to give Florida discretion not to provide funding of organ transplants, the 1989 amendment adding § 1396d(r)(5) took it away for individuals under the age of twenty-one who are otherwise qualified under the state plan. Florida may not elect, therefore, not to pay for a liver-bowel transplant and incidental medical treatment for Lexen Pittman, a qualified Medicaid recipient under age twenty-one.

Having rejected the Secretary's argument on its merits, we easily conclude that Lexen satisfies the other prerequisites for injunctive relief.

### CONCLUSION

Through our order of July 29, 1993, we VACATED the order of the district court denying Lexen injunctive relief and REMANDED the action to the district court for the issuance of an appropriate preliminary injunction consistent with our earlier order. *See* Appendix.

### APPENDIX

ORDER:

Ramona Pope filed this action in the district court as next friend of her infant son Lexen Pittman. She seeks declaratory and injunctive relief requiring the defendant to pay for a liver-bowel transplant and incidental medical services for Lexen. The district court denied the plaintiff's request for a preliminary injunction, and the plaintiff appeals. We expedited consideration, heard oral argument yesterday, and now enter judgment on the merits.

The defendant argues that the plaintiff is not entitled to the requested relief because 42 U.S.C. § 1396b(i)(1) gives Florida discretion to elect not to provide coverage under its Medicaid plan for liver-bowel transplants for infants. We disagree; we conclude that § 1396b(i)(1) does not give Florida such discretion. We also conclude that the plaintiff

has satisfied all of the prerequisites for injunctive relief.

The order of the district court denying plaintiff injunctive relief is VACATED and the action is REMANDED to the district court with instructions to issue an appropriate preliminary injunction.

The district court found it unnecessary to consider the defendant's argument relative to the amount of any financial guarantee to be provided Children's Hospital of Pittsburgh. *Upon remand the district court should consider this argument.*

Due to the exigencies of the situation, the district court should speedily determine what injunction is appropriate, and immediately issue it.

This order constitutes the judgment of this court on the merits of this appeal. The mandate shall issue immediately. The filing of a petition for rehearing shall not stay the mandate. *See* Fed.R.App.P. 41(a).

The court defers preparation and filing of a more comprehensive opinion in order to expedite disposition of this appeal. The court will, however, prepare and file an opinion forthwith.