Rachel EKLOFF, et al., Plaintiff,

v.

Anthony D. RODGERS, Director of the Arizona Health Care Cost Containment System, and the Arizona Health Care Cost Containment System Administration, Defendant.

No. CV05–407TUC–RCC.

United States District Court, D. Arizona.

March 3, 2006.

Sally Hart, Arizona Center for Disability Law, Tucson, AZ, Robin C. Murphy, Arizona Center for Disability Law, Phoenix, AZ, Jennifer Lynne Nye, Arizona Center for Disability Law, Tucson, AZ, for Leon Igras, Mary Hull, Sarah Ekloff, Steve Harris, Tracy Hoel, Plaintiffs.

Logan T Johnston, Johnston Law Offices PLC, Phoenix, AZ, for Arizona Health Care Cost Containment System, Anthony D. Rodgers, Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT

COLLINS, District Judge.

Oral argument was heard on February 24, 2006, regarding Plaintiffs' Motion for Summary Judgment (Docket # 11) and Defendants' Cross–Motion for Summary Judgment (Docket # 28). Plaintiffs' Motion for Summary Judgment is hereby granted.

## I. FACTUAL AND LEGAL BACKGROUND

Plaintiffs filed a class action law suit in June 2005. The named Plaintiffs are all minors under 21 years of age with numerous developmental and other disabilities who reside with their parents in various cities throughout Arizona.[1]

Plaintiff children are each eligible for medical services from the Arizona Medicaid program, known as the Arizona Health Care Cost Containment System (AHCCCS). Medicaid is a medical assistance program for low income and disabled people jointly funded by the federal and state governments and authorized by Title XIX of the Social Security Act (42 U.S.C. §§ 1396–1396v). The AHCCCS is Arizona's version of the Medicaid program.

As a result of their disabilities, Plaintiff children are incontinent of bowel and/or bladder. Although they do not currently have skin breakdown, their physicians have prescribed incontinence briefs for them. The children need incontinence briefs in order to avoid skin breakdown and infection and to enable the children to participate in social, community, therapeutic and educational activities. Currently, the parents of Plaintiff children buy the incontinence briefs at personal cost, on average over $100 per month.

Defendant Anthony D. Rodgers is the Director of the AHCCCS. Defendant AHCCCS Administration ("AHCCCSA") is the single state agency responsible for ensuring that health services are provided to eligible Arizona residents in compliance with federal Medicaid law, Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq. as well as state laws. AHCCCSA contracts with managed care organizations throughout the state to deliver a specified package of AHCCCS services in return for a monthly payment per beneficiary.

Plaintiffs contend that Rodgers has a duty to ensure that AHCCCSA complies with federal and state law which mandates the provision of incontinent briefs for preventive purposes rather than merely after there are skin breakdowns with open sores. The current policy of AHCCCSA covers incontinence briefs for children with disabilities only when a child has skin breakdown that could become infected but not for preventative purposes.

---

1. Named Plaintiffs are children with disabilities who reside with their parents. A sample of the numerous Plaintiffs includes Rachel Ekloff, a 10–year old with low-functioning Down Syndrome, sensory integration disorder and severe eczema; Rebecca Ekloff, a 5 year-old with Down Syndrome who is severely developmentally delayed; Grace Ekloff, a 7 year-old with Down Syndrome and is mentally retarded; Richard Harris, an 8 year-old with developmental delays, periventricular leukomalacia (damage and softening of the inner part of the brain) and hypospadias (abnormal positioning of the opening from which the urine passes); and Caitlin Hoel, a 14–year old with Aicardi Syndrome (a rare X-linked syndrome that results in global delays, autistic behavior, mental retardation and a seizure disorder).

In their Complaint, Plaintiffs asked that the Court certify this action as a statewide class action pursuant to Federal Rules of Civil Procedure Rule 23.[2] Additionally, they requested for the Court to issue a declaratory judgment holding that Defendants' practice of denying coverage for incontinent briefs for Plaintiffs to be in violation of Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") provisions of the Medicaid statute; for the Court to issue a permanent injunction prohibiting Defendants from denying Plaintiff children coverage of incontinent briefs prescribed to them as a preventive measure; for the Court to issue an order requiring AHCCCSA to reimburse Plaintiff parents for the cost of incontinent briefs purchased by the parents and to award Plaintiffs' reasonable attorneys' fees and costs.

Defendants filed a Motion to Dismiss alleging lack of subject matter jurisdiction and failure to state a claim. A hearing on Defendants' motion was held on October 11, 2005, where the Court denied the motion.

Plaintiffs subsequently filed a motion for summary judgment and Defendants responded with their own cross-motion for summary judgment. One of Defendants' main contentions in their cross-motion is that the facts are sufficiently in dispute to necessitate a jury trial. However, the core facts are indisputable: the children have disabilities requiring incontinent briefs, the treating physicians of these children have prescribed incontinence briefs for being necessary for the treatment of the children, and AHCCCSA is not currently providing the incontinence briefs. The rest of the case revolves around questions of law suitable for resolution through summary judgment.

## II. DISCUSSION

### 1. Standard for Motion for Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party has the burden of proof at trial—"the plaintiff on a claim for relief or the defendant on an affirmative defense"—that party carries its initial burden by presenting evidence showing no reasonable trier of fact could find for the nonmoving party. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986). If the moving party does not have the burden of proof, that party carries its initial burden either by presenting evidence negating an essential element of the nonmoving party's claim or demonstrating that the nonmoving party cannot meet its burden at trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *Nissan Fire & Marine Insurance v. Fritz*, 210 F.3d 1099, 1101 (9th Cir.2000).

Once satisfied, the burden shifts to the opponent to demonstrate through production of probative evidence that an issue of

---

**2.** This was granted in an Order of the Court      dated December 6, 2005.

fact remains to be tried. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, ... the adverse party's response must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of element essential to the party's case, and on which that party will bear the burden of proof at trial." *Thomas v. Douglas,* 877 F.2d 1428, 1430 (9th Cir.1989).

When considering a motion for summary judgment, the court is not to make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). Instead, the court should draw all inferences in the light most favorable to the nonmoving party. *Id.*

**2. Federal Medicaid Law Requires Incontinence Briefs Be Included In EPSDT Coverage**

Both AHCCS and ALTCS provide coverage for medical supplies which includes incontinence briefs. The State of Arizona has chosen to provide medical services to AHCCCS beneficiaries and under the ALTCS program, medical supplies are mandated for all individuals who are entitled to receive nursing facility services. A.R.S. § 36–2907(A)(6); 42 U.S.C. § 1396a(a)(10)(D), 42 C.F.R. § 440.70.

Plaintiffs claim that having made this election, Defendants are required under federal Medicaid law to provide incontinence briefs to beneficiaries of both the AHCCCS and ALTCS programs. This is because medical supplies must be provided if they are medically necessary. The AHCCCS regulations define "medically

necessary" as "a covered service provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law to prevent disease, disability, or other adverse health conditions or their progression, or prolong life." A.A.C. R9–22–101(B). The physicians of Plaintiff children have indeed prescribed incontinence briefs to avoid skin breakdown as well as to allow Plaintiff children to be able to participate in limited daily activities. Therefore, the incontinence briefs are "medically necessary."

*a. Purpose of EPSDT Within Medicaid*

Medicaid is a federal and state government jointly funded medical assistance program for low income and disabled people. 42 U.S.C. §§ 1396–1396v. AHCCCS, as Arizona's version of the Medicaid program, provides acute and long term care services. Arizona Long Term Cary Systems ("ALTCS") provides long term care services.

■■■ A state is not required to participate in the Medicaid program. However, once a state chooses to participate and accept matching federal funds, it must comply with federal Medicaid law. *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). Arizona is a participant in the federal Medicaid program requiring it to comply with federal Medicaid law.

Two years after it was enacted in 1965, Congress augmented the federal Medicaid program's coverage to provide early and periodic screening, diagnosis and treatment ("EPSDT") services to Medicaid eligible children. *See* 42 U.S.C. §§ 1396a(a)(1), 1396a(a)(43), 1396a(4)(B), and 1396d(r)(5).

This came as part of the Congressional definition of "medical assistance" in the Medicaid statute. 42 U.S.C. § 1396d(a).

The definition is a variety of some twenty-seven different types of services for which the federal governments and states will pay. Some of these are mandatory while others are optional. EPSDT is one of the mandatory categories. 42 U.S.C. § 1396d(a)(4)(B). This statute requires coverage of:

> early and periodic screening, diagnostic, and treatment services (as defined in subsection (r) of this section) for individuals who are eligible under the plan and are under the age of 21;

42 U.S.C. § 1396d(a)(4)(B).

EPSDT coverage in turn specifies a defined group of services in § 1396d(r). These are four specific categories of services (which are irrelevant for purposes of this suit) and a catch-all fifth category that is the subject of this case:

> (r) Early and periodic screening diagnostic, and treatment services. The term "early and periodic screening, diagnostic, and treatment services" means the following items and services:
>
> .    .    .    .    .
>
> 5. Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical or mental illnesses and conditions discovered by the screening services, whether or not such services are covered by the State plan.

42 U.S.C. § 1396d(r)(5). The phrase "to correct or ameliorate" is the focus of the argument in this case as Plaintiffs argue

that this phrase shows Congressional intent to include incontinence briefs within the scope of EPSDT coverage for preventive purposes.

■ EPSDT was crafted with the intent that it be "the nation's largest preventive health program for children." H.R. 3299, 101st Cong. § 4213 (1989). The most noteworthy aspects of the 1989 EPSDT reforms were twofold: (1) Congress obligated participating states to provide a comprehensive package of preventive services that met reasonable standards of medical necessity (42 U.S.C. §§ 1396a(a)(43), 1396d(r)); and (2) Congress expanded EPSDT services to include "[s]uch other necessary health care, diagnostic services, treatment, and other measures described [as medical assistance] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." *Id.* These amendments require states to provide Medicaid coverage for any service "identified as medically necessary through the EPSDT program." 135 Cong. Rec. S.6899, daily ed. June 19, 1989.

■ Thus, the text of the statute and its legislative history demonstrate that states participating in the Medicaid program must provide all of the health care and services permitted under § 1396d(a) when necessary to correct or ameliorate a defect or condition discovered by screening. *S.D. v. Hood,* 391 F.3d 581, 590 (5th Cir.2004).[3]

---

**3.** In *Hood,* the Fifth Circuit Court of Appeals considered a case analogous to this one. In that case, the Fifth Circuit ruled that coverage for incontinence briefs for preventive reasons is mandated by the EPSDT provisions of the Medicaid statute. *Hood,* 391 F.3d 581. The court held that the Louisiana Medicaid agency's policy of refusing to cover incontinence briefs for children violated the EPSDT provisions of the federal Medicaid statute, despite

the state's plan that explicitly and legally excluded coverage of incontinence briefs for adults. *Id.* The Fifth Circuit went on to find that both the plain meaning of the EPSDT sections of the statute and their legislative history, showed that Congress intended for the states to follow federal requirements as to the specific services and supplies provided under the program, and that incontinence briefs are included among these. *Id.*

Every Circuit which has examined the scope of the EPSDT program has recognized that states must cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a). *See Collins v. Hamilton*, 349 F.3d 371, 376, n. 8 (7th Cir.2003) ("a state's discretion to exclude services deemed 'medically necessary' ...has been circumscribed by the express mandate of the statute"); *Pittman by Pope v. Sec'y Fla. Dep't of Health & Rehab.*, 998 F.2d 887, 892 (11th Cir.1993) (1989 amendment adding § 1396d(r)(5) took away any discretion to state might have led to exclude organ transplants from the treatment available to individuals under twenty-one); *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Services*, 293 F.3d 472, 480–81 (8th Cir.2002) (state must provide EPSDT coverage for "early intervention day treatment" as part of § 1396(a)(13)'s "rehabilitative services" category because program was structured to ameliorate conditions and strengthen skills children learn in therapy).

### b. Meaning of the EPSDT Provisions

The question of whether incontinence briefs for preventive purposes fits with the EPSDT provisions becomes the issue.

■ The district court reviews a state agency's interpretation of a federal statute *de novo*. *Orthopaedic Hospital v. Belshe*, 103 F.3d, 1491, 1495 (9th Cir.1997). The district court must determine whether the state law and regulations implementing Medicaid are "consistent with federal law." *Id.*

■ In determining the meaning of the Medicaid Act's EPSDT provisions, the starting point is the language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Section 1396(a)(10) provides that a state plan for medical assistance must make available to all qualified individuals "the care and services listed in" § 1396(a)(4). Section 1396a(a)(4)(B) provides that "medical assistance" means payment of part or all of the "cost of the following care and services" for individuals: "early and periodic screening, diagnostic, and treatment [EPSDT] services (as defined in subsection (r) of this section) for individuals who are eligible under the plan and are under the age of twenty-one." Section 1396d(r), in pertinent part, provides that "[t]he term early and periodic screening, diagnostic, and treatment services means the following items and services: ...(5) Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5).

■ The crucial phrases of § 1396d(r)(5) provide that EPSDT care and services include: (1) "health care, diagnostic services, treatment, and other measures described in [§ 1396d(a)]" (2) "necessary ...to correct or ameliorate ...conditions discovered by the screening services" (3) "whether or not such services are covered under the State plan." *Hood*, 391 F.3d 581. The natural reading of § 1396d(r)(5)'s phrases is that all of the health care, services, treatments and other measures described by § 1396d(a) must be provided by state Medicaid agencies when necessary to correct or ameliorate unhealthful conditions discovered by screening, regardless of whether they are covered by the state plan. *Id.* This reading is also required by the grammatical structure of § 1396d(r)(5). The medical assistance made available to EPSDT children must be for health care described in the list of twenty-seven categories set forth in

§ 1396d(a)-modified by the requirement that it must be necessary for corrective or ameliorative EPSDT purposes-further modified by the statutory mandate that it must be provided whether or not it is covered under the state plan. *Id.* The language and structure Congress used cannot be read in any other way without rendering the crucial phrases meaningless. *Id.*

■ Thus, Plaintiffs claim that Arizona must provide children under 21 with Medicaid coverage for all corrective treatment and medical assistance/services found to be necessary in an EPSDT screening and that is a covered service under federal Medicaid law, even if such service is not normally covered under a State's Medicaid program.

The Congressional Record reflects the broad nature of the intent, "Medicaid would cover any medically necessary service identified as necessary through the EPSDT program." 135 Cong. Rec. S6900 (June 19, 1989) (statement of Sen. Chafee). Further, EPSDT was foreseen as "the largest preventive health program for children." H.R. 3299, 101st Cong. § 4213 (1989).

The federal Centers for Medicare and Medicaid Services, part of the Department of Health and Human Services, issued a State Medicaid Manual which states that EPSDT is intended to "[a]ssure that health problems found are diagnosed and treated early, before they become more complex and their treatment more costly." CMS State Medicaid Manual § 5010.B. This seems to be exactly the point of Plaintiffs, that the incontinence briefs are meant to prevent the ailment (skin sores) before they become more open wounds which is much more expensive to treat as well as painful to the children.

Essentially, the question becomes whether a preventive treatment is required under the phrase "to correct or

ameliorate." The Southern District of Indiana, in determining whether long-term residential care for a psychiatric patient, fit into the definition of "correct or ameliorate" looked to Webster's Seventh New Collegiate Dictionary (1963) which defined "ameliorate as 'to make better or more tolerable.'" *Collins ex rel. Collins v. Hamilton,* 231 F.Supp.2d 840, 849 (S.D.Ind.2002).

That is the only case nationwide that even makes an attempt to define "correct or ameliorate" for purposes of Medicaid. Accordingly, the Court is left to its own devices to use the dictionary definition like the Southern District of Indiana as well as to attempt to divine the intentions of Congress as to what they meant.

■ Webster's Dictionary defines "ameliorate" as "to make better or more tolerable." Clearly, the incontinence briefs are meant to make the children's condition better or more tolerable by preventing skin breakdown. The briefs are used to not only prevent future pain from open skin sores but to facilitate and maximize their daily opportunities as well as to make their condition as tolerable as possible by not forcing them to suffer the needless pain of skin sores. This seems to be the very essence of what Congress had intended in their Medicaid statute.

Additionally, from reading the legislative history and the Congressional Record, it appears that there is a very strong inference to be inclusive rather than exclusive. EPSDT was crafted to "be the nation's largest preventative health program for children." H.R. 3299, 101st Cong. § 4213 (1989). Senator Chafee made the statement that "Medicaid would cover any medically necessary service identified as necessary through the EPSDT program." 135 Cong. Rec. S6900 (June 19, 1989). Thus, the legislative history of Medicaid in gen-

eral and the EPSDT program in particular supports Plaintiffs' contentions.

The State says to "correct or ameliorate" means that it only needs to cover services that correct or improve actually existing defects and conditions and that EPSDT does not require preventative measures. Under this logic, the State would exclude such remedies as anti-psychotic drugs until someone has already had a bout of insanity rather than prevent it in the first place. This stance simply cannot be borne out by the reading of the statute, prior case law, and the legislative history. The State is interpreting their federally required mandate to "correct or ameliorate" the potential skin sores for these children in an extremely narrow manner that is also impossible to integrate within the wider framework of Medicaid law.

Defendants argue in their reply and in their cross-motion for summary judgment that what Plaintiffs seek are preventive services and that is not mandated.[4] However, other courts have ruled that EPSDT is designed to provide health education, preventive care, and effective follow-up care for conditions identified during check-ups. *Frew v. Hawkins*, 401 F.Supp.2d 619, 624 (E.D.Tex.2005). Preventive health care identifies health problems that may respond to early treatment but, if left untreated, may instead lead to serious health conditions. *Id.*

Defendants are essentially making their argument on a technicality. They are saying that the State should not be required to provide preventive incontinence briefs because that does nothing "to correct or ameliorate" the disabilities of the children.

While technically this is true as incontinence briefs do not help the original conditions of the children like Down Syndrome or Aicardi Syndrome, this ignores the reality that the subsequent skin breakdown is a direct byproduct of the original disability. Therefore, by supplying preventive incontinence briefs to the affected children would in fact be "to correct or ameliorate" (at least in part) the children's condition and thus is required by federal Medicaid law.

Accordingly, the Court holds that the phrase "to correct or ameliorate" within the EPSDT provision is meant to include incontinence briefs for preventive purposes for Plaintiff children. As such, the State has no discretion to decide whether to provide them or not, instead the State is obligated under federal law to provide the briefs at issue. Furthermore, the State must reimburse Plaintiff parents for their out-of-pocket expense in buying the incontinence briefs themselves.

## 3. The Issuance of a Permanent Injunction to Bind the State Agency

██ "Every order granting an injunction and every restraining order shall set forth the reasons of its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R.Civ.P. 65(d). "Rule 65(d) 'is derived

---

4. Defendants' Cross–Motion for Summary Judgment did not raise any new points save one. Instead, in their cross-motion, Defendants essentially reiterated their reply to Plaintiffs' Motion for Summary Judgment. Because of this, the Defendants' cross-motion is not discussed separately with respect to the

issues. The only substantive point that Defendants brought up in their cross-motion was that the State is immune from suits seeking compensatory damage under the 11th Amendment. However, this misses the right of Plaintiffs to seek redress through the Court for a State violation of Medicaid law.

from the common-law doctrine that a decree of injunction not only binds the parties Defendant but also those identified with them in interest, in privity with them, represented by them or subject to their control.'" *Emily Q. v. Bonta,* 208 F.Supp.2d 1078, 1093 (C.D.Cal.2001) (quoting *Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945)).

The permanent injunction enjoins the State, its administering agencies and those parties that contract with the administering agencies to provide necessary medical services (including supplies) from denying Plaintiff parents or Plaintiff children incontinence briefs for preventive purposes.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Docket # 11) is GRANTED and Defendants' Cross–Motion for Summary Judgment (Docket # 28) is DENIED.

IT IS FURTHER ORDERED that a permanent injunction is ISSUED ENJOINING the State, the AHCCCSA or any contractually-bound third party from denying Plaintiff children or Plaintiff parents incontinence briefs for preventive purposes.

IT IS ADDITIONALLY ORDERED that the AHCCCSA reimburse Plaintiff parents for their out-of-pocket expenses for providing their own incontinence briefs for Plaintiff children.

Finally, IT IS ORDERED that Plaintiffs are awarded reasonable attorneys' fees and expenses.