NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 8, 2014
Decided March 11, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-2752

| | |
|---|---|
| ALBERT L. FISHER, M.D., <br> *Plaintiff-Appellant,* <br><br> *v.* <br><br> AURORA HEALTH CARE, INC., <br> *Defendant-Appellee.* | Appeal from the United States District Court for the Eastern District of Wisconsin. <br><br> No. 1:13-CV-00152 <br><br> William C. Griesbach, <br> *Chief Judge.* |

## O R D E R

Dr. Albert Fisher alleged that Aurora Health Care engaged in anticompetitive practices, in violation of Sections 1 and 2 of the Sherman Act, to eliminate independent physicians from its medical staff in order to cut costs. He claims that Aurora deprived patients of the ability to receive second evaluations from doctors not employed by Aurora. The district court dismissed his claims, finding that Fisher failed to allege an antitrust injury and lacked antitrust standing. On appeal, Fisher challenges the district court's dismissal,

arguing that he met both legal requirements to bring a private antitrust suit. We disagree, find that Fisher lacked antitrust standing, and affirm the district court's judgment.

## I. BACKGROUND

Dr. Albert Fisher is a Wisconsin-licensed family practice physician who maintains an independent practice in Oshkosh, Wisconsin. Aurora Health Care owns and operates Aurora Medical Center ("AMCO"), which is located less than two miles from another major hospital located in Oshkosh – Mercy Medical Center.

Nearly a decade ago, Fisher joined the medical staff at AMCO and arranged with the hospital that when he was not "on call" to see patients another doctor who was on call would provide immediate care to Fisher's patients. However, sometime in 2010, the hospital changed its policy and required all medical staff associated with the hospital, including independent physicians, to be on call 24 hours a day, 7 days a week. Fisher argues that this requirement is nearly impossible to meet. In addition, Fisher alleges not only is the 24/7 condition nearly impossible to meet, but that Aurora took steps to prevent him from arranging backup calls with physicians and undermined his ability to meet the hospital's coverage condition. On September 2, 2011, Aurora informed Fisher that he would not be allowed to renew his medical staff privileges unless he agreed to 24/7 call coverage, or provided equivalent alternate coverage by a physician who was on Aurora's medical staff. In 2012, Aurora refused to consider Fisher's re-application for medical staff privileges. Although Fisher was denied staff privileges at AMCO, at the time his re-application was rejected, he held staff privileges at Mercy Medical Center in Oshkosh and at a few other hospitals and medical centers in the area.

On February 13, 2013, Fisher sued Aurora after it refused to renew his medical staff privileges. He claims that his exclusion from the hospital's medical staff was part of an anticompetitive conspiracy to exclude independent physicians from the hospital, in violation of Section 1 of the Sherman Act, and that his exclusion denied him access to an "essential facility," in violation of Section 2 of the Act. Specifically, he claims that Aurora agreed, or acted in combination with others, to prevent independent physicians from obtaining backup medical coverage for his patients. In the process, Fisher believes that Aurora drove independent physicians from the market of providing hospital care. The

result, Fisher argues, was that patients were deprived of second opinions from independent physicians.

Aurora moved to dismiss the complaint for failure to state a claim and the court dismissed his Sections 1 and 2 claims because Fisher failed to allege an antitrust injury and lacked antitrust standing. Fisher asked the court for leave to amend his complaint, but the court denied his motion on the basis that it was impossible for Fisher to sufficiently amend his complaint. Fisher now appeals.

## II. ANALYSIS

Fisher contends that the district court erred when it dismissed his suit for failing to state a claim. We review the district court's dismissal under de novo review. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Fisher argues that he has antitrust standing to bring his private Sections 1 and 2 claims because he, as opposed to patients or insurance companies, is a better party to bring this type of claim. Under Section 4 of the Clayton Act, private citizens may bring civil actions to enforce the Sherman Act. *Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918, 926 (7th Cir. 1995). However, in light of guidance from the Supreme Court, we have said that Section 4 does not give all people who are injured by an antitrust violation standing to sue. *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993). In order to succeed on his claims, Fisher must not only establish an antitrust injury, but also antitrust standing. *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596-97 (7th Cir. 1995). To assess whether a plaintiff has standing to sue, we examine: "(1) the causal connection between the alleged anti-trust violation and the harm to the plaintiff; (2) improper motive; (3) whether the injury was of a type that Congress sought to redress with the antitrust laws; (4) the directness between the injury and the market restraint; (5) the speculative nature of the damages; (6) the risk of duplicate recoveries or complex damages apportionment." *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 718 (7th Cir. 2006) (quoting *Sanner*, 62 F.3d at 927) (alterations omitted).

Fisher may not bring his Sections 1 and 2 claims because he lacks antitrust standing. In discussing the directness inquiry, the Supreme Court has said that "[t]he existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more

remote party ... to perform the office of a private attorney general." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 542 (1983). We have interpreted this to mean that only those "who can most efficiently vindicate the purposes of the antitrust laws" have standing to bring a private antitrust action. *Serfecz*, 67 F.3d at 598 (quotation omitted).

In *Kochert*, using *Associated General Contractors* to guide our analysis, we examined a case very similar to the one at issue here. In that case, an anesthesiologist alleged that she was driven from the market when two hospitals merged. Kochert brought an antitrust suit against the hospitals claiming that consumer welfare decreased because the merged hospital contracted with a different anesthesiologist group than the one to which she belonged. She argued that she had standing to bring the suit because she was an efficient enforcer of antitrust law. We found the directness inquiry weighed "particularly heavily" in the case and stated that consumers or insurers would be the most efficient enforcers of antitrust laws because they would be the most directly affected by a rise in prices or reduction in output. *See* 463 F.3d at 718-19. In that case, we were skeptical of allowing individual doctors to bring antitrust suits in light of the Supreme Court's concern with opening a floodgate of antitrust litigation. *Id*. at 719; *See also Serfecz*, 67 F.3d at 598 (stating that there is a need to balance the interests of deterrence of antitrust violations through private antitrust enforcement and avoidance of excessive treble damages litigation). We found that denying Kochert's antitrust suit did not hurt the market because it would "not likely leave a significant antitrust violation undetected or unremedied." *Kochert*, 463 F.3d at 719 (quoting *Associated Gen. Contractors*, 459 U.S. at 542). Ultimately, we ruled that Kochert lacked antitrust standing to bring her Sections 1 and 2 claims because patient-consumers, insurers, or even groups of doctors would serve as better plaintiffs than individual doctors to seek a remedy for the antitrust violation. *Id*.

As this case fits squarely within the four corners of *Kochert*, and Fisher does not provide any useful insights that distinguishes this case from *Kochert*, we find that *Kochert* applies here. Following *Kochert's* holding that consumers, insurance companies, or even groups of doctors serve as better plaintiffs than individual doctors to enforce potential antitrust violations, we find that Fisher is not the plaintiff that can most efficiently vindicate an alleged antitrust violation.

Moreover, two other factors outlined in *Associated General Contractors* weigh against a finding of antitrust standing. First, the injury that Fisher alleges he suffered does not appear to be the type that Congress sought to redress with antitrust laws. In *BCB Anesthesia Care Ltd. v. Passavant Memorial Area Hospital Ass'n*, we rejected the notion that hospital staffing decisions could give rise to antitrust concerns. 36 F.3d 664, 668 (7th Cir.1994) (stating that staffing decisions at a single hospital is not a violation of Section 1 of the Sherman Act). Fisher points to no case law that directly supports the argument that the loss of medical services provided by *independent physicians* is the type of injury recognized by antitrust laws. Second, although Fisher is arguably a direct competitor, the causal connection between his alleged injury and the alleged antitrust violation is tenuous at best. Fisher presents no evidence that patients in the Oshkosh metropolitan area are deprived of independent physicians. His argument is especially tenuous given that he has staffing privileges at other hospitals and medical facilities in the area. Because Fisher has not offered any arguments with regard to the other factors sufficient to tip the scales away from our ultimate conclusion, we find that he lacks standing to bring his private suit and see no need to discuss the merits of his Sections 1 and 2 claims.

Fisher also argues that the district court erred by denying his request to amend his complaint. The district court's denial of leave to amend a complaint is reviewed for an abuse of discretion. *See Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 925-26 (7th Cir. 2003). Generally, leave to amend a complaint should be freely given unless it is certain from the face of the complaint that any amendment would not be able to cure the complaint's defect. *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2004). Fisher's argument fails because there is no set of facts that he could plead that would save his complaint. *Kochert* foreclosed his ability to bring suit, as he was not the most efficient enforcer to bring an antitrust suit. Accordingly, the district court did not abuse its discretion when it denied Fisher's request to amend his complaint.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.